### William W. LORD, et al.

v.

### SOCIETY FOR the PRESERVATION OF NEW ENGLAND ANTIQUITIES, INC.

Supreme Judicial Court of Maine.

Argued March 3, 1994.

Decided March 28, 1994.

David E. Hunt (orally), Elizabeth T. McCandless, McCandless & Hunt, Portland, for plaintiff.

Roy S. McCandless (orally), Verrill & Dana, Portland, for defendants.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS, and RUDMAN, JJ.

RUDMAN, Justice.

The heirs of Elizabeth Beasom Stephan appeal the entry of a summary judgment by the York County Probate Court (*Brooks, J.*) in favor of the Society for the Preservation of New England Antiquities, Inc. (SPNEA). The Probate Court held that, in the absence of clear and unequivocal language demonstrating an intent to do so, a bequest in Mrs. Stephan's will to SPNEA of "the Phyllis," a life-sized "dummy board" painting from the eighteenth century, does not create a fee simple subject to a condition subsequent, and therefore did not give the heirs a right to reentry after SPNEA moved "the Phyllis" from the Parson Smith House where Mrs. Stephan had requested it be displayed. We affirm the judgment.[1]

In 1976 Elizabeth Beasom Stephan of Kennebunkport died. In her will, drafted in 1974, was the following clause:

> I give and bequeath to the SOCIETY FOR THE PRESERVATION OF NEW ENGLAND ANTIQUITIES, a Massachusetts charitable corporation ... for use only in the "Parson Smith House", River Road, Windham, Maine, the following article of tangible personal property: my wooden fire screen figure, known as "Phyllis" painted by Madam Wendell of her personal mulatto maid. It would be my great plea-

---

1. We also grant SPNEA's motion to strike certain portions of the Lords' brief that were unsupported by the record. *See Langille v. Norton,* 628 A.2d 669, 669 n. 1 (Me.1993). During oral argument, the Lords consented to the entry of this order.

sure, without intending to create any legal obligation, if "Phyllis" could be hung on the door leading from the front hall into the dining room in the Parson Smith House. In the event that "Phyllis" cannot be distributed under the provisions of this Clause SIXTEENTH, because aforesaid Society does not wish to accept this bequest, or because at my decease said Parson Smith House is not in existence or is not in the possession and in control of aforesaid Society, then "Phyllis" shall be disposed of in accordance with the provisions of Clause EIGHTEENTH of this will.[2]

SPNEA accepted "the Phyllis" and placed it in the Parson Smith House for public display for fifteen years. In 1991 SPNEA determined that it would no longer be able to maintain the Parson Smith House as a public museum. In March 1992 the Cumberland County Probate Court (*Childs, J.*) granted SPNEA permission to sell the property. SPNEA subsequently moved "the Phyllis" to another of its historic sites, the Hamilton House in South Berwick, where it remains today.

In August 1992 the remaining heirs of Mrs. Stephan's estate, William, Philip, and John Lord, Andrew Miller, and Penelope Warrikoff ("the Lords"), filed a complaint in York County Probate Court against SPNEA and Michael E. Carpenter in his capacity as Attorney General of the State of Maine[3]

alleging the breach of a condition of Mrs. Stephan's will and requesting the right of reentry. The Lords and SPNEA filed motions for a summary judgment. The Probate Court granted SPNEA's motion for a summary judgment and denied the heirs' motion on the ground that Clause Sixteenth did not create a condition subsequent and therefore the heirs did not have a right to recover "the Phyllis." This appeal followed.

■ "The intention of the testator, collected from the language of the whole instrument interpreted in light of the manifest object of the testator, guides construction of the will." *Estate of Sweet,* 519 A.2d 1260, 1264 (Me.1987). In the instant case, the Probate Court focused specifically on the language of Clause Sixteenth and held that the use of the words "for use only in the Parson Smith House" were "not strong and clear enough" to create a conditional gift.[4]

■ Whether the language of a will is ambiguous, and the resolution of any ambiguities, are questions of law that we review *de novo* when, as here, no extrinsic evidence[5] of the testator's intent is presented to the court. *Estate of Hardy,* 609 A.2d 1162, 1163 (Me. 1992). The Lords argue that the Probate Court erred in not construing the words "for use only in the Parson Smith House" to create a condition subsequent. Specifically they point to the precatory language within Clause Sixteenth regarding Mrs. Stephan's preference as to where "the Phyllis" should

2. Clause Eighteenth names three of the plaintiffs, William, Philip, and John Lord, first cousins of Mrs. Stephan, as beneficiaries to certain items of personal property.

3. The Lords' complaint named the Attorney General as a defendant, citing the Attorney General's statutory duty to "enforce due application of funds given or appropriated to public charities within the State and prevent breaches of trust in the administration thereof." 5 M.R.S.A. § 194 (1989). The Attorney General in his answer declined to take a position on the merits of the complaint, stating that all of the interested parties had been given "adequate opportunity to present their respective positions." Because the Probate Court did not refer to the Attorney General in its decision, we will not discuss the role of the Attorney General in this case.

4. The court alternatively held that to the extent Clause Sixteenth did create "conditions" those conditions were satisfied at the time of the be-

quest in that SPNEA accepted the gift and had control and possession of the Parson Smith House at the time of the distribution. The Lords do not contend that SPNEA failed to meet these conditions expressed in the latter part of Clause Sixteenth. They argue that the court erred in focusing on these conditions precedent and ignoring the "for use only in the Parson Smith House," which they aver created a condition subsequent.

5. The Lords did submit an affidavit of the attorney who had drafted Stephan's will, in which the attorney describes Stephan's desires with regard to the bequest of the Phyllis. We have held that such testimony from the drafting attorney regarding the testator's oral declarations of intent is inherently unreliable and therefore inadmissible. *Estate of Utterback,* 521 A.2d 1184, 1187–88 (Me.1987).

be displayed within the Parson Smith House. The Lords contend that this demonstrates that Mrs. Stephan knew how to phrase the language describing her intent so as not to create a legal obligation. In contrast, by attaching the words "for use only in the Parson Smith House" to the bequest, the Lords argue that Mrs. Stephan *did* intend to create a legal obligation in SPNEA.

The Lords also emphasize Clause Twenty-first, wherein Mrs. Stephan established a trust fund given to SPNEA for upkeep of the Parson Smith House, and provided in the event that the house passes out of SPNEA's control, the trust fund would be used for "general purposes." The Lords contend that this clause demonstrates Mrs. Stephan's recognition that the Parson Smith House could pass out of SPNEA's control. Why then did Clause Sixteenth not include provision for "the Phyllis" should the Parson Smith House pass out of SPNEA's control? The Lords argue that Clause Sixteenth did not include these words of reentry because it was Mrs. Stephan's understanding that such words were not necessary nor could they create a legally transferable estate. *See Whitmore v. Church of the Holy Cross*, 121 Me. 391, 396, 117 A. 469 (1922) ("It is well settled in this State that one who gives an estate subject to defeat on condition subsequent has no estate left that he can either alienate or devise.... Where the estate is granted upon an express condition, it is unnecessary to stipulate also for a right of entry for a breach of the condition.") (citations omitted).

Although we recognize that the Lords present a *plausible* explanation of Mrs. Stephan's intent, we must reject their arguments. We agree with the Probate Court that the words of conveyance found in Clause Sixteenth simply do not express clearly or unequivocally that the bequest of "the Phyllis" is subject to the condition that it remain for all time in the Parson Smith House, and if it is removed from that location it is forfeited. While we have held that the drafter need not employ "magic" words to create a condition subsequent, we have been extremely reluctant to recognize the existence of such a condition absent a clear showing that the testator intended a limited gift. *Whicher v. Abbott*, 449 A.2d 353, 356 (Me.1982); *Babb v. Rand*, 345 A.2d 496, 499 (Me.1975); *Phinney v. Gardner*, 121 Me. 44, 46, 115 A. 523 (1921).[6]

The Lords argue that the failure to construe the phrase "for use only in the Parson Smith House" as a condition results in an unacceptable interpretation of it as surplusage. While we recognize that the phrase "for use only in the Parson Smith House" demonstrates Mrs. Stephan's *strong preference* that "the Phyllis" remain in the Parson Smith House, we cannot say it is sufficient to create a *legal obligation* that it remain in the Parson Smith House. *See, e.g. Whitmore v. Church of the Holy Cross*, 121 Me. at 394, 117 A. 469 (the mere recital of a purpose for which a conveyance was made does not import a condition).

We must also reject the Lords' explanation that words of reentry were not employed in Clause Sixteenth because they are not legally required to describe a condition subsequent. This is a circular argument in that it again assumes at the outset that the words creating the condition were so clear as to not call in question the testator's intent to create such a lingering legal obligation. Even the Lords must concede that inclusion of words of reentry in Clause Sixteenth would have clearly expressed the testator's intent to attach a condition to the gift.

6. Our previous discussions of the language needed to create a condition subsequent have admittedly been in the context of the devise of real estate. The historical policy of protecting the alienability of real property has led to a reluctance to recognize the existence of conditions that could result in a subsequent forfeiture, unless those conditions clearly demonstrate the testator's intent. This protective policy is just as applicable to bequests involving personal property and we see no reason to craft a separate rule for the creation of conditions attached to the bequest of personal property. In the Uniform Probate Code, for example, the definition of "property" includes both real and personal property "and means anything that may be the subject of ownership." 18–A M.R.S.A. § 1–201(33) (1981). *See also Estate of Hardy*, 609 A.2d at 1163 n. 3. In today's society, a great deal of wealth can be tied up in personal property and therefore limits to its transferability would be just as detrimental as such limits on real property.

In sum, despite the diligent efforts of the Lords to construe the will as a whole, and Clause Sixteenth in particular, as demonstrating Mrs. Stephan's intent to create a condition subsequent, Mrs. Stephan's intent is simply not as clear as they would like it to be. When a clause of a will is ambiguous, as it is in the instant case, it will be construed so as to avoid the forfeiture. *Inhabitants of Frenchville v. Gagnon,* 112 Me. 245, 246, 91 A. 951 (1914). It does not seem overly harsh to require the drafter to use clear and unequivocal language when the testator wants to attach a condition to a gift, the breach of which will result in a forfeiture. We agree with the Probate Court that Mrs. Stephan's will does not express the clear intent to grant SPNEA "the Phyllis" in fee simple subject to a condition subsequent.

The entry is:

Judgment affirmed.

All concurring.