2000 ME 49

**ESTATE OF Maybelle M. WILSON.**

Supreme Judicial Court of Maine.

Submitted on Briefs Dec. 17, 1999.
Decided March 15, 2000.

---

Charles Harvey, Harvey & Frank, Portland, for appellants.

No other parties filed briefs.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Shriners Hospitals For Children, Shriners Hospital For Crippled Children, and Shriners Burn Institute (Shriners), residuary beneficiaries of Maybelle Wilson's estate, appeal from a judgment of the Washington County Probate Court (*Holmes, J.*) finding an asserted residuary clause in Maybelle Wilson's will ineffective and determining that her estate passes to a niece and a nephew by intestacy. Shriners contends that the court erred in (1) finding the residuary clause contingent upon the simultaneous death of Maybelle Wilson and her husband, John Wilson; and (2) refusing to consider statements contained in an affidavit by the attorney who drafted the will. We vacate and remand for two reasons: (1) interested per-

sons who never became active parties were improperly defaulted; and (2) the hearing notice process for the personal representative's petition for instructions was defective.

## I. CASE HISTORY

[¶ 2] Maybelle Wilson and her husband, John Wilson, had a lengthy marriage and created a significant estate. In 1960, Maybelle Wilson executed a will which devised her estate contingent on three alternative events, which were as follows: (1) If Maybelle Wilson predeceased her husband, her estate went to her husband; (2) if Maybelle Wilson and her husband died simultaneously, the will made specific bequests to a number of individuals and entities; and (3) if Maybelle Wilson's husband predeceased her, the will directed that the same distribution be made as if she and her husband had died simultaneously. Residuary beneficiaries under the 1960 will were Maybelle Wilson's brother and her niece and nephew who were her brother's children.

[¶ 3] In 1978, the Wilsons executed new wills two days apart. The same attorney drafted both 1978 wills. Maybelle Wilson's will provided two dispositional choices: (1) If Maybelle Wilson's husband survived her, her estate went to him; and (2) if Maybelle Wilson and her husband died simultaneously, specific bequests were indicated in Paragraphs FOURTH through EIGHTH of the 1978 will. These paragraphs made two specific bequests, one to the City of Calais (Paragraph FOURTH) and one to the Congregational Church of Calais (Paragraph FIFTH). Paragraph EIGHTH, the residuary clause, left the remainder of the Estate to Shriners.

[¶ 4] The 1978 will included no provision for an eventuality that John Wilson would predecease Maybelle Wilson. This provision had been included in Paragraph "LASTLY" of her 1960 will. This was replaced by Paragraph "LASTLY" in the 1978 will, which directed that the attorney who drafted the will should also be the attorney for the administration of her estate.[1]

[¶ 5] The will also directed that "under the provision of Paragraph THIRD"—the simultaneous death provision—The Merrill Trust Company, now Fleet Bank of Maine, was appointed executor of the Estate. John Wilson's will, executed two days later, made a modest bequest to a church and left his residuary estate to Shriners in the event that either Maybelle Wilson predeceased him or husband and wife died simultaneously.

[¶ 6] In 1985, Maybelle Wilson executed a codicil to her will, replacing paragraphs FOURTH and FIFTH which had the effect of adjusting the control of money given to the City of Calais and adding bequests of $2,500 each to her niece, Nancy Bowles, and nephew, Clifford Alexander, and $500 each to the seven children of her niece and nephew. There was no amendment of Paragraph THIRD, or any other adjustment of the will to consider an eventuality of John Wilson predeceasing Maybelle Wilson. Accordingly, under the terms of the will, the paragraphs amended by the 1985 codicil continued to be contingent on the simultaneous deaths of Maybelle and John Wilson.

[¶ 7] John Wilson died in 1991. Maybelle Wilson survived him, but died in 1993. On October 3, 1996, Fleet Bank presented Maybelle Wilson's will for informal probate, see M.R. Prob. P. 2(a)(1); 18–A M.R.S.A. ¶¶ 3–301 through 3–311 (1981), and applied for appointment as personal representative pursuant to the will. See 18–A M.R.S.A. § 3–307 (1981). The docket entries indicate that the 1996 notice of initiation of the informal probate proceedings was sent to interested persons listed in the probate filings including Wilson's niece and nephew, Shriners, and the other named beneficiaries in the will. In infor-

---

1.  Another attorney with the same firm actual-      ly represented the estate in these proceedings.

mal probate proceedings, "no pleading after the application shall be *required or permitted.*" M.R. Prob. P. 12(a)(1) (emphasis added).

[¶ 8] On October 24, 1996, Fleet Bank filed its bond as personal representative in the amount of $700,000. This bond was filed pursuant to 18–A M.R.S.A. § 3–604 (1981) which states that personal representative bonds should be not less than the estimated value of an estate. The file contains no other evidence of value of the estate, particularly it does not contain the inventory of property and fair market value required to be prepared and filed or furnished to requesting interested parties pursuant to 18–A M.R.S.A. § 3–706 (1981).

[¶ 9] On September 15, 1997, Fleet Bank filed a petition for instructions. This petition noted that all of the directives in the will following Paragraph THIRD were, under a literal reading of the will, contingent on the simultaneous death alternative stated in Paragraph THIRD. This included the bequests to named individuals and the residuary beneficiary, Shriners. It also included Fleet Bank's appointment as personal representative which explicitly referenced Paragraph THIRD.

[¶ 10] Fleet Bank's petition noted that, "[t]here is no explicit direction in the 1978 will as to what should happen to Mrs. Wilson's property, if her husband did not survive her, which was what in fact happened." The petition then asked for direction from the court as to whether the 1978 will could be administered in accordance with the provision from the 1960 will which gave the same direction for disposition of property if Mrs. Wilson's death was simultaneous or subsequent to her husband's death. If this was not possible, the petition asked, alternatively, "to whom should the estate now pass? Should it pass to the heirs at law of Maybelle M. Wilson by intestacy?" The heirs at law to whom the estate would pass by intestacy are apparently Maybelle Wilson's nephew and niece, Clifford Alexander and Nancy Bowles.

[¶ 11] While the record is unclear, it appears that notice of a November 12, 1997 hearing date, a copy of the petition for instructions, and apparently other items were sent by certified mail to the interested persons including Shriners, and the niece and nephew. The notice cautioned that the petition "may be granted" if no objections were received in writing or by appearance at the hearing. No interested person, including Shriners, the niece or nephew, or any other named individual responded to the notice or attended the hearing on November 12, 1997, other than an attorney for Fleet Bank.

[¶ 12] On December 17, 1997, Fleet Bank sought and was granted defaults against all interested persons who apparently had received notice, including Shriners and the niece and nephew.[2] The defaults were purportedly granted under M.R. Prob. P. 55(a). Why default was sought and what was being defaulted is unclear, since there was no outstanding judgment and Fleet Bank's petition had not sought "a sum certain" or specific relief, only direction from the court.

[¶ 13] The entry of the default in this case occurred upon request to the Register of Probate, not to the court, although the court had already conducted its hearing on the petition. Thus, this is not a case of a party being defaulted for failure to appear at trial. Further, the default and subsequent judgments were entered without proper proof of service on approximately half of the defaulted interested persons. An unsigned affidavit of service by mail[3] on approximately half of the heirs, including Nancy Bowles, was not filed until June

---

**2.** The personal representative is to use its authority "for the best interests of successors to the estate." 18–A M.R.S.A. 3–703(a); *see also In re Estate of Morine,* 363 A.2d 700, 704 (Me.1976). It does not appear that the defaults served these "best interests."

**3.** *See* 18–A M.R.S.A. § 1–401 (1981).

2, 1999, after all of the relevant judicial events in the Probate Court had occurred.[4]

[¶ 14] Following the December 1997 default of the interested persons, there was no further action for 16 months until April 30, 1999, when the court issued its order on the petition for instructions.[5] In that order, the court determined that the provisions of the FOURTH through the EIGHTH clauses of the will, including the appointment of the personal representative, the specific bequests, and the residuary clause, "having been made expressly on a contingency which did not take place, do not take effect." Accordingly, the court directed that, "pursuant to Title 18–A M.R.S.A. § 2–101, the Estate of Maybelle M. Wilson passes by intestacy to the decedent's heirs, Clifford J. Alexander and Nancy Bowles."

[¶ 15] Despite an alternative disposition of a large sum of money towards individuals who reasonably could have believed they had no significant interest in the estate, the record indicates that only the attorney for Fleet Bank was notified of this order. At some point in the next few weeks, Shriners apparently learned of the court's order and of its significant stake in the estate.

[¶ 16] On May 27, 1999, counsel for Shriners appeared for the first time and filed a motion to set aside the judgment and for expedited hearing. The reason for the expedited hearing request was the imminent expiration of the time period for filing an appeal. See M.R. Civ. P. 73(a).[6] Shriners did not move to strike the earlier default or demonstrate "good cause" for its apparent late appearance. See M.R. Civ. P. 55(c).[7]

[¶ 17] In support of its motion, Shriners filed an affidavit by the attorney who had drafted the 1978 will in which he asserted that it was the testator's intent that if both died simultaneously or if one predeceased the other, the great bulk of the estate would go to the residuary beneficiary, Shriners. The attorney also asserted that the failure to make provision for that alternative in Maybelle Wilson's will was the result of a scrivener's error.

[¶ 18] The very next day, May 28, 1999, the court conducted a telephone hearing on the motion to set aside the judgment. Counsel for Shriners and Fleet Bank participated. Also on May 28, the court issued an order: (1) granting the motion to set aside the judgment, citing M.R. Prob. P. 60(b); (2) refusing to consider the affidavit of the attorney who had drafted the will, citing *Estate of Utterback*, 521 A.2d 1184 (Me.1987); and (3) reentering the April 30, 1999 judgment, which the court incorporated by reference. From that order, Shriners brought this appeal and was the only party to appear and file a brief and appendix.

[¶ 19] For purposes of this appeal, we assume that the court construed its orders of April 30, 1999, and May 28, 1999, as

---

**4.** M.R. Prob. P. 11, which incorporates M.R. Civ. P. 11, requires that unsigned pleadings "not be accepted for filing."

**5.** In the interim, counsel for the personal representative had written the court on several occasions trying politely to prompt the court into making a decision.

**6.** Shriners' counsel cited both M.R. Prob. P. 59 and 60 when he filed his motion to set aside the judgment. Considering that the motion could certainly be construed as a motion to alter or amend the judgment under Rule 59, pendency of Shriners' motion would have tolled the running of the period for filing an appeal pursuant to M.R. Prob. P. 73 (which incorporates M.R. Civ. P. 73(a) into the Probate Rules). However, the request for an expedited hearing was appropriate in an excess of caution in light of continuing uncertainty as to which motions to reconsider or set aside judgments will toll the running of time for filing an appeal. Amendments to M.R. Civ. P. 7 and 59, adopted February 8, 2000, and effective May 1, 2000, clarify the issue regarding motions for reconsideration.

**7.** Rule 55(c) provides that, "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." M.R. Civ. P. 55(c).

judgments by default against the interested persons, entered pursuant to application to the court as required by M.R. Prob. P. 55(b) (which incorporates by reference M.R. Civ. P. 55(b)(2)). Thus, we construe the Probate Court's action as a final judgment as to all interested persons.

## II. DISCUSSION

[¶ 20] Every individual has a basic right to due process under the Federal and State Constitutions which includes, at a minimum, fair notice and opportunity to be heard before a court acts on matters affecting that particular individual's liberty or property interests. *See Board of Overseers of the Bar v. Lefebvre*, 1998 ME 24, ¶ 15, 707 A.2d 69, 73; *see also Estate of Elias*, 451 A.2d 637, 640 (Me.1982) (holding notice sufficient that attached copies of petition which specifically outlined issues to be adjudicated at a probate court hearing). What process, including notice, is due will vary from case to case to promote the basic fairness of each particular action. *See Balian v. Board of Licensure in Med.*, 1999 ME 8, ¶ 10, 722 A.2d 364, 367.

[¶ 21] Fleet Bank's petition for instructions asked the Probate Court to make a decision which, in either alternative, would directly and substantially affect significant rights of interested persons, particularly Shriners, Clifford Alexander, and Nancy Bowles. For approximately half of the heirs including Shriners and Maybelle Wilson's nephew, Clifford Alexander, a signed affidavit of notice [8] of the November 12 hearing was filed October 8, 1997. The file does not indicate that any proper affidavit of notice has ever been filed regarding Maybelle Wilson's niece, Nancy Bowles, or Nancy Bowles's children, all of whom live in Canada. The file does contain a docket entry indicating that on June 2, 1999, the same day this appeal was filed, an "unsigned, undated affidavit of service regis-

tered mail [was] filed." The file includes such a document listing Nancy Bowles and her children, but with no date and no signature. Attached to this unsigned, undated document, are return receipts indicating that all of the named individuals, except Aaron Bowles, had their receipts accepted by an individual named Jim "Boles" on October 10, 1997. The form regarding Aaron Bowles is blank; there is no indication that he has ever been served.[9]

[¶ 22] It appears that the defaults cut the interested persons off from further notice and opportunities to participate in matters related to the case. All that was known to the interested persons was that an "informal" proceeding had been commenced which suggested no great controversy or difficulty, and in which their participation was not "required or permitted." From the record it is not certain that either Clifford Alexander or Nancy Bowles were aware during the proceedings, *or are aware today*, that they each may have a stake of perhaps $350,000 in the outcome of this proceeding. One can also assume that, had Shriners been fully aware of the extent of Shriners' stake in the proceedings, it would have attempted to participate in the November 12, 1997 hearing, resisted default, and sought to involve itself in the proceedings at some time earlier than it did.

[¶ 23] In the circumstances, it was a violation of the Probate Code and the Probate Rules to enter a default and subsequent judgments against interested persons who had not filed a formal appearance. It was also a violation of the Probate Code and Probate Rules to enter judgment against those interested persons on whom service of the hearing notice was never properly confirmed. In fact, the Probate Code does not appear to contem-

---

8. *See* 18–A M.R.S.A. § 1–401 (1981).

9. Aaron Bowles was not defaulted as he was neither served nor otherwise notified of the proceeding. The capacity of the court to ad-

judicate Aaron Bowles's rights and complete the proceedings regarding the estate is uncertain on the current record.

plate default of persons designated as interested persons in informal proceedings, unless such persons take action to become parties in a formal probate proceeding.

[¶ 24] Because the interested persons were improperly notified of the proceedings generated by the petition for instructions, and the defaults entered were unauthorized by the Probate Code, the defaults entered and the subsequent judgment must be vacated. The case must be remanded for a new hearing, after appropriate notice that calls to the attention of the interested persons their opportunity to participate to protect their interests.

[¶ 25] The Shriners' appeal raises some other issues of both law and evidence generated by the matter. On some occasions, where there is a remand, and actions of the court below are in dispute, this Court may provide guidance to avoid future litigation and appeals. *Cf. Merrill v. Sugarloaf Mountain Corp.*, 2000 ME 16, ¶ 15, 745 A.2d 378. Generally such guidance is only provided in cases when all interests are appropriately represented and have appeared before this Court arguing the points in contest. Here, only one party made presentations to this Court. We will not make interlocutory rulings on legal issues where others who evidently have significant interests have not appeared before this Court due to the notice problems addressed above.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.