2002 ME 71

**Estate of Florence N. LORD.**

Supreme Judicial Court of Maine.

Argued: Feb. 7, 2002.
Decided: April 24, 2002.

---

William C. Knowles (orally), Merritt T.C. Ireland, Verrill & Dana, LLC, Portland, for appellants.

Catherine R. Connors (orally), Barbara K. Wheaton, Portland, for appellees, 14 individual devisees.

David J. Ballou, Ballou & Bedell, York, for appellees, First Parish Church & York Public Library.

Peter Clifford, Hodsdon & Clifford, LLC, Kennebunk, for appellee, Animal Welfare Society.

Panel: SAUFLEY, C.J., and RUDMAN, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Nancy N. Dreher and Emily N. Haggerty appeal from the judgment of the York County Probate Court (*Nadeau, J.*) construing the will of Florence N. Lord. Dreher and Haggerty contend that the court erred by finding the will ambiguous and admitting extrinsic evidence to ascertain Lord's intent. They further allege error in the court's construction of language in the will which results in the distribution of the residue of Lord's estate to sixteen named beneficiaries rather than to Lord's heirs by intestacy. We affirm the judgment of the Probate Court.

## I. THE PARTIES AND THE WILL

[¶ 2] Florence N. Lord died on March 23, 1998. Her husband's death was a month earlier, and their only child Anne died in 1979. Dreher and Haggerty are the daughters of Lord's only sibling.

[¶ 3] Lord left a will dated June 24, 1997, drafted by her attorney who had known the Lords for a number of years. Lord's nephew, John B. Nichols, the brother of Dreher and Haggerty, is the personal representative of the estate. Nichols, Dreher,

and Haggerty filed the petition for construction of Lord's will that began this litigation, but Nichols is not a party to the appeal. The petition requested the court to determine whether subpart F of Article Fifth, which refers to a "trust," fails because there is no trust and whether, therefore, the assets referred to in subpart F pass by intestacy. The petition also asked whether Lord's real estate in York passes by intestacy because the will does not expressly dispose of it. The petition contained other requests, but they were resolved by settlement. The appellees, who responded to the petition, are thirteen of the sixteen beneficiaries named in Article Fifth of the will.

[¶ 4] The dispute is focused primarily on Article Fifth of the will. The first three articles dispose of certain furniture, personal items, certificates of deposit, and Massachusetts real estate to relatives and named charities. Article Third provides a life estate to Lord's husband in real estate in York if he survives her, but there is no explicit provision for the York property if he does not survive her and no provision for disposition of the property after termination of the life estate. Article Fourth establishes a family trust which is to terminate upon the death of Lord's husband. Upon termination, the principal of the trust, after gifts to charities, is to be divided into fourteen equal shares to be paid to sixteen named individuals including Nichols, Dreher, and Haggerty.[1] The other named beneficiaries are the nieces and nephews of Lord's husband and close family friends and their children.

[¶ 5] Article Fifth is entitled "Alternative Devise," and purports to dispose of Lord's estate if her husband predeceases her. Portions of Article Fifth are inconsistent with portions of the first three arti-

cles, but the parties reached a settlement concerning several of those inconsistencies. Subpart F of Article Fifth states: "The entire remainder of the Trust shall be divided into fourteen (14) equal shares and my Trustee shall pay over one (1) equal one-fourteenth (1/14th) share, free of all trust, to the following: ...." Listed thereafter are the same sixteen individuals listed in Article Fourth. This quoted language from subpart F is precisely the same language that appears in Article Fourth to distribute the assets of the trust upon Lord's husband's death.

[¶ 6] The parties agree that no trust exists. No trust was established by Lord's will except the trust referred to in Article Fourth, which never came into being because Lord's husband predeceased her. Thirteen of the named beneficiaries claim that the words "trust" and "trustee" in Article Fifth were inadvertent and that Lord intended to use the words "estate" and "personal representative" instead. Dreher and Haggerty contend that because there is no trust, the residue of Lord's estate, including the York real estate, must pass to the heirs by intestacy. If they are correct, it means that Nichols, Dreher, and Haggerty would receive all of the residue of the estate, including the York real estate, and the thirteen named beneficiaries would receive nothing. If Dreher and Haggerty do not prevail, they will each receive one-fourteenth of the residue.

[¶ 7] The Probate Court heard testimony from Nichols, Dreher, Haggerty, and several of the other named beneficiaries. The court also heard testimony from the attorney who drafted the will and his secretary. It reviewed numerous documents that were admitted into evidence including the

---

1. Twelve of the individuals are each to receive one share, with the two remaining shares to be divided by four individuals.

previous wills and codicils executed by Lord, as well as the wills of Lord's husband and daughter.

[¶ 8] The Probate Court concluded that Lord intended that Article Fifth serve as a residuary clause. It found that Lord and her husband had close and affectionate relationships with the named beneficiaries in subpart F and that Lord's daughter Anne regarded her cousins on both sides of the family as brothers and sisters. The distribution of assets to the named beneficiaries was consistent with Lord's previous wills as well as her husband's and daughter's wills. The court stated that Lord and her husband "were highly motivated to mirror their late daughter, Anne's, own testamentary wishes regarding her 'brothers and sisters' when [they] prepared and executed their own estate plans." That Lord intended her York home to be included in the distribution in Article Fifth was evident to the court because after fifteen years of estate planning, it is not likely that she would have left a significant asset undistributed.[2] Furthermore, the totality of circumstances, including the fact that without the York real estate there would be no assets to satisfy these devises, demonstrated to the court that Lord intended the York property to be included in Article Fifth. The court found that there is no trust to which Article Fifth could refer, and the use of the words "trust" and "trustee" was explained by the method of document preparation in the office of Lord's attorney.

[¶ 9] The court's order provides that the residue of Lord's estate, including her real estate in York, passes pursuant to Article Fifth, subpart F, "as though the word 'estate' was substituted for the word 'trust' and as though the word 'personal representative' was substituted for the word 'trustee.' " The order also calls for the attorney fees for both the prosecution of and opposition to the petition to be paid by the estate.

## II. DISCUSSION

[¶ 10] When a court does not utilize extrinsic evidence to determine the existence of an ambiguity in a will, we review the determination de novo. *Lord v. Soc'y for the Pres. of New England Antiquities, Inc.,* 639 A.2d 623, 624 (Me.1994). When a court takes extrinsic evidence and finds a latent ambiguity we review the factual findings for clear error and review de novo the application of law to the facts. *See Estate of Plummer,* 666 A.2d 116, 118 (Me.1995).

[¶ 11] Dreher and Haggerty's primary argument is that the court erred in admitting extrinsic evidence to clarify an ambiguity. Subpart F refers to a trust. Dreher and Haggerty stated in their petition the extrinsic fact that no trust existed at the time of Lord's death, and none was created by her will. Although they argue that the terms "trust" and "trustee" as used in subpart F are not ambiguous terms, they do not acknowledge that the use of these terms, in light of the extrinsic fact of the nonexistence of a trust, created an ambiguity. The reference to a trust in subpart F, combined with the fact of the nonexistence of a trust, viewed in the context of the entire will, renders subpart F susceptible to more than one interpretation. It possibly means that Lord intended to create a trust at a later date but did not; it could mean that she was mistaken about the existence of a trust; or it could be an inadvertent use of the term. Subpart F is ambiguous.

[¶ 12] Other than their general objection to any extrinsic evidence, Dreher and Hag-

---

**2.** There was testimony setting the value of the York real estate between $800,000 and $900,000.

gerty do not specifically object to evidence concerning the Lords' close relationships with family and others. The court did not err by admitting extrinsic evidence of the familial and other relationships between the named beneficiaries and Lord, her husband and daughter. *See Estate of Utterback*, 521 A.2d 1184, 1187 (Me.1987) (stating that evidence of testator's relationships with family members is admissible to resolve ambiguity). Likewise, Dreher and Haggerty do not specifically object to evidence of Lord's previous wills or her husband's and Anne's wills. These documents helped explain circumstances known to Lord, and they further demonstrated the familial relationships. *See id.* The court did not err in admitting this extrinsic evidence.

■ [¶ 13] Over the objection of Dreher and Haggerty the court allowed Lord's attorney, the scrivener of the will, and his secretary, to testify. Essentially their testimony was that through utilization of the "cut and paste" feature of their word processing computer program, provisions of Article Fourth, which created a trust, were copied into subpart F of Article Fifth. The attorney admitted his carelessness in drafting the will.

■ [¶ 14] Testimony by a scrivener concerning oral declarations of the intent of the testator is inadmissible. *Utterback*, 521 A.2d at 1188. As the cases make clear, the danger in such evidence is its inherent unreliability. *Id.; Lord*, 639 A.2d at 624 n. 5. The court was well aware of the prohibition and several times stated that expressions of Lord's intent were not admissible and that only evidence of facts and circumstances at the time of the execution of the will would be allowed. Neither the attorney nor his secretary testified about any oral declarations or expressions by Lord concerning her intent. They testified about facts and circumstances in the lawyer's office. Their testimony was not inherently unreliable as are statements of a testator's oral declarations. The court did not err in admitting the testimony.

[¶ 15] The court characterized the lawyer's testimony as providing an explanation of the "usual course of preparing estate planning documents" in his office. From the court's findings it is apparent that the import of the attorney's testimony of carelessness in drafting was only as a corroborative explanation as to how the term "trust" came to be in subpart F.[3] The primary facts that the court relied upon in its determination that Lord did not intend that the residue of her estate be placed in a trust were: (1) the nonexistence of any trust; (2) the close ties that the family had with the listed beneficiaries indicating an intent to leave something to them; and (3) Lord's prior wills, as well as her husband's and Anne's wills, left the residue of their estates to basically the same beneficiaries, indicating a consistency of purpose of the three Lords.

■[¶ 16] Supporting the court's construction of subpart F in reading "trust" to mean "estate" is the presumption against intestacy. *See Swan v. Swan*, 154 Me. 276, 280, 147 A.2d 140, 142 (1958). Dreher and Haggerty contend that subpart F is so inconsistent with the remainder of the will

---

3. The court recognized that subpart F was not the only provision outside of Article Fourth that referred to a trust. While the court admitted that it was at first troubled by other references to a trust, it was persuaded that the lack of an existing trust at the time of the execution of the will and the fact that Lord did not create a trust meant that the references were drafting errors. Article Eighth referred to "any trust herein created." In Article Ninth, Lord appointed a bank as trustee of "the trusts created in this my Last Will and Testament."

that all estate assets not expressly devised in other articles must pass by intestacy to them and their brother. The presumption against intestacy is rebuttable, but the court found that the evidence was not sufficient to rebut the presumption in this case, and that finding is not clearly erroneous.

[¶ 17] Dreher and Haggerty contend that the court rewrote subpart F without sufficient evidence that Lord intended the remainder of her estate to be distributed by the personal representative to the named beneficiaries. We disagree. There was sufficient evidence for the facts found by the court, and those facts gave sufficient indication of Lord's intent to allow the court to interpret the terms "trust" and "trustee" in subpart F as though they read "estate" and "personal representative." It was proper to do so because the substituted words give effect to Lord's intent. In *Daggett v. Taylor*, 124 Me. 88, 90, 126 A. 338, 339 (1924), we said:

"[C]ourts will change or mould the language of the will in order to give to it its intended effect, with the avowed object of dispelling the effect of some inaccurate or inappropriate use of language on the part of the testator or his scrivener, and making the will interpret what he obviously meant, just as though his ideas had been clearly and correctly expressed in the instrument . . . ."

(citation omitted).

[¶ 18] Finally, the thirteen named beneficiaries request that their costs of appeal be paid out of the estate but that Dreher and Haggerty's costs of appeal not be paid from the estate. We conclude that, pursuant to 18–A M.R.S.A. § 1–601 (1998), the costs of the thirteen named beneficiaries may be paid out of the estate, and the case is remanded to the Probate Court to determine the reasonable amount of costs incurred by them. Dreher and Haggerty have not requested that their costs of appeal be paid out of the estate, and therefore, we issue no order as to their costs.

The entry is:

Judgment affirmed. Remanded for calculation and award of appellees' costs, including attorney fees, on appeal.