2003 ME 92

**ESTATE OF Maybelle WILSON.**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 29, 2003.

Decided: July 18, 2003.

Charles Harvey, Harvey & Frank, Portland, for appellants.

Panel: CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Shriners Hospital for Children, Shriners Hospital for Crippled Children, and Shriners Burn Institute appeal from the order on a petition for instructions entered in the Washington County Probate Court (*Holmes, J.*) ruling that the Estate of Maybelle M. Wilson passes by intestacy. Shriners argue that the Probate Court erred in interpreting Maybelle Wilson's will. We agree and vacate the decision of the Probate Court.

## I. BACKGROUND

[¶ 2] This is the second time this case has reached us. The facts and procedural background are detailed in *Estate of Wilson*, 2000 ME 49, 747 A.2d 582. Only a brief summary of the pertinent facts and a description of Maybelle Wilson's will are included here.

[¶ 3] Maybelle Wilson and her husband, John, were married for many years and acquired a substantial estate. They had no children. John died in 1991, and Maybelle died in 1993.

[¶ 4] In 1960, Maybelle executed a will that contained three possibilities for division. If John survived Maybelle, her entire estate would go to John. If Maybelle

and John died simultaneously, specific bequests would go to several people, including her niece and nephew. If Maybelle survived John, the specific bequests of the simultaneous death provision would apply.

[¶ 5] In March 1978, with the assistance of attorney Francis Brown, Maybelle and John executed new wills, revoking their previous wills. Paragraphs FIRST and SECOND of Maybelle's 1978 will provided that her entire estate would go to John if he should survive her. Paragraph THIRD stated that if Maybelle and John die simultaneously, her estate would be disposed of "as follows." Paragraph FOURTH bequeathed $10,000 in trust to the City of Calais to benefit a funeral plot in the Calais Cemetery, and paragraph FIFTH provided for $500 to the Congregational Church of Calais. With no indication whether the conditional paragraph THIRD continued to apply, paragraph SIXTH empowered Maybelle's executors to sell any of her property to carry out the purposes of the will. Paragraph SEVENTH began with the clause, "Under the provisions of Paragraph THIRD," and went on to appoint Merrill Trust Company (now Fleet Bank) as executor.

[¶ 6] Paragraph EIGHTH is the center of controversy in this case because it grants the "rest, residue and remainder" of the estate to the Shriners' hospitals. There is no indication, other than the order of the paragraphs, as to whether paragraph EIGHTH only applied in the paragraph THIRD condition of simultaneous death. The will ended with paragraph LASTLY, which expressed the hope that Francis Brown would be retained as legal counsel by the executor. No provision was made regarding the division of Maybelle's estate in the event that Maybelle survived John. Paragraph LASTLY of the revoked 1960 will had dictated that, in the event that Maybelle survived John, the estate

should be divided in the same proportions as if the two had died simultaneously. In 1985, Maybelle executed a codicil to her will, altering only paragraphs FOURTH and FIFTH, which she revoked and replaced with bequests to her niece and nephew and their children.

[¶ 7] In John's 1978 will, he left his entire estate to Maybelle if he should predecease her. If Maybelle predeceased him or they died simultaneously, a small bequest would go to a church and the residue of his estate to Shriners.

[¶ 8] This case began when Fleet Bank filed an application for informal probate and thereafter filed a petition for instructions. The court issued instructions finding that there was no provision in Maybelle's will to dispose of the estate if she survived John and concluding that the residue of her estate passes by intestacy. Shriners appealed, and we vacated the judgment on procedural grounds and remanded the case to the Probate Court for further proceedings. *Estate of Wilson*, 2000 ME 49, ¶ 24, 747 A.2d at 588.

[¶ 9] On remand, the matter was submitted to the court on a stipulation by Shriners and Fleet Bank which provided that the evidence would consist of the wills of Maybelle and John and the affidavit of Francis Brown.[1] The court admitted a portion of Brown's affidavit that stated: (1) the Wilsons were aware their estate was worth several hundred thousand dollars; (2) they had no children; and (3) both were very interested in the Shriners' hospitals. The court found that "there is a strong probability that the failure of Maybelle M. Wilson to provide for the disposition of her estate in the event that her husband predeceased her was unintention-

al on her part and may have been the result of a scrivener's error." Nonetheless, the court ruled that Paragraph EIGHTH only applied to the situation of simultaneous death and that, because Maybelle survived John, the residue of the estate should pass by intestacy. Thus, Maybelle's heirs, her niece and nephew, would receive the residue. This timely appeal followed.

## II. DISCUSSION

[¶ 10] Shriners assert that the court erred in interpreting Maybelle's will. We review a court's interpretation of a will de novo and factual findings for clear error. *Estate of Lord*, 2002 ME 71, ¶ 10, 795 A.2d 700, 703.

[¶ 11] The Probate Code states that "[t]he intention of a testator as expressed in his will controls the legal effect of his dispositions." 18–A M.R.S.A. § 2–603 (1998). A court must interpret the will within the four corners of the document but may use the context of the entire will to interpret specific sections. *Lord v. Soc'y for the Pres. of New England Antiquities, Inc.*, 639 A.2d 623, 624 (Me.1994). A court may resort to extrinsic evidence to discern the intention of the testator if the will is ambiguous. *Maietta v. Winsor*, 1998 ME 84, ¶ 7, 710 A.2d 238, 239.

[¶ 12] Maybelle's will is ambiguous because it is susceptible to two reasonable interpretations. *Estate of Lord*, 2002 ME 71, ¶ 11, 795 A.2d at 703. The Probate Court interpreted paragraph THIRD as the beginning of a conditional section, and it construed all paragraphs following paragraph THIRD as being applicable only if that condition occurred. The condition in

---

1. Fleet Bank refiled its petition for instructions which was served on all interested persons, including Maybelle's niece, nephew, and their respective children. Only Shriners ap-

peared in response to the petition, and entries of default were made on all other interested persons.

paragraph THIRD was simultaneous deaths of Maybelle and John. Thus, the court concluded that the residuary clause in paragraph EIGHTH never became applicable because the Wilsons did not die simultaneously. Because Maybelle's will contained no express provision for the distribution of her estate in the event that she survived her husband, the court held that her estate passed by intestacy. This is a reasonable interpretation because paragraph THIRD ends with the words "as follows" and a colon as the concluding punctuation. The paragraphs that follow paragraph THIRD do not indicate an end to the conditional qualification.

[¶ 13] However, there is another reasonable interpretation. Paragraph SIXTH speaks generally of giving authority to the executor to "sell and convey" any part of Maybelle's estate "in order to carry out the purposes expressed in this Will." Paragraphs EIGHTH and LASTLY are also general provisions that normally apply to the entire will. In addition, the only paragraph after FIFTH that does not appear to be general, paragraph SEVENTH, which deals with appointing an executor, specifically refers back to the condition in paragraph THIRD ("Under the provisions of Paragraph THIRD above . . . ."). This indicates that the condition in paragraph THIRD does not qualify the paragraphs starting with paragraph SIXTH through paragraph LASTLY, except paragraph SEVENTH, which explicitly states it is qualified by paragraph THIRD.

[¶ 14] These two reasonable interpretations of Maybelle's will require a conclusion that the will is ambiguous, and, therefore, it is the court's responsibility to determine the testator's intentions. Extrinsic evidence to resolve the ambiguity is appropriate. *Estate of Utterback*, 521 A.2d 1184, 1187 (Me.1987).

[¶ 15] Extrinsic evidence that the court accepted included: Maybelle's 1960 revoked will; John's 1978 will; and portions of the Brown affidavit. The structure of Maybelle's 1960 will demonstrated that she earlier provided for the distribution of her estate in the event that either she and John died simultaneously; that she predeceased him; or that John predeceased her. John's 1978 will, executed two days after Maybelle's will, left the residue of his estate to Shriners if Maybelle predeceased him or if they died simultaneously. Brown's affidavit stated that the Wilsons shared a strong interest in the Shriners' hospitals. Maybelle's codicil provided only for a limited bequest to her relatives. This uncontested extrinsic evidence leads to the conclusion that Maybelle intended that the residue of her estate go to Shriners. In fact, the court made a finding: "It is probable that Maybelle . . . intended to dispose of her estate in the same fashion regardless of whether her husband predeceased her or whether they died simultaneously."

[¶ 16] There are two canons of construction that lend support to the interpretation that Maybelle intended that the residue of her estate go to Shriners. First, there is a strong presumption against intestacy. 18–A M.R.S.A. § 2–604 (1998);[2] *In re In re Edwards' Estate*, 161 Me. 141, 150, 210 A.2d 17, 22 (1965). We presume a testator has passed her entire estate through her will unless it appears that she intended to do otherwise. Because May-

---

2. Section 2–604 reads:
   A will is construed to pass all property which the testator owns at his death including property acquired after the execution of the will. A devise of property conveys all the estate of a devisor unless it appears by his will that he intended to convey a lesser estate.
   18–A M.R.S.A. § 2–604.

belle devised her entire estate in the event of simultaneous death and in the event that she predeceased John, and she intended only a small portion of her estate to go to her heirs, there is no indication that Maybelle intended a portion of her estate to pass by intestacy.

[¶ 17] Second, there is a "special favoritism which the law has toward a charitable gift or trust." *In re Estate of Thompson*, 414 A.2d 881, 888 (Me.1980). If there is a charitable gift at issue, such as the gift to Shriners, the law urges special effort to see that that gift is completed. These two canons support the interpretation that it was Maybelle's testamentary intent to pass the residue of her estate to Shriners.

The entry is:

Judgment vacated and remanded for further proceedings consistent with this opinion.