2006 ME 138

**Estate of Alice J. SILSBY.**

Supreme Judicial Court of Maine.

Submitted On Briefs: July 18, 2006.

Decided: Nov. 28, 2006.

Raymond L. Williams, Esq., Robert W. Laffin Jr., Esq., Roy, Beardsley, Williams & Granger, LLC, Ellsworth, for appellant.

Joseph T. Walsh Jr., Esq., Walsh Law Offices, Bangor, for appellees.

Panel: DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

DANA, J.

[¶ 1] Herbert T. Silsby II, personal representative of the Estate of Alice J. Silsby and trustee of testamentary trusts created by Alice's will, appeals from a judgment of the Hancock County Probate Court (*Morton, J.*) construing Alice's will in favor of the petitioner, the Estate of Donald E. Bridges. After post-judgment proceedings, the Probate Court surcharged Herbert Silsby personally for the amount of the judgment, plus interest of 5% per annum since 1990. The court also approved the payment of trustee fees, and awarded the Bridges Estate a portion of its attorney fees. Herbert contends that the Probate Court erroneously interpreted the will, erred in surcharging him personally, and awarded an excessive amount of interest. The Bridges Estate cross-appeals, contending that the Probate Court erred in allowing the trustee fees and disallowing the great percentage of its attorney fees. We affirm the judgment.

## I.  BACKGROUND

[¶ 2] Alice Silsby never married and had no children of her own. She had five brothers and sisters, all of whom had children. In 1973, Alice asked her nephew, attorney Herbert T. Silsby II, to prepare her will. The will provides for several specific bequests upon Alice's death, including a bequest of $1000 to each of her nieces and nephews. The will further directs that the remaining assets of Alice's estate be placed in two equal trusts for the benefit of Alice's sisters, Frances and Mary, during their lifetime, with the residue to be distributed after their death to the children of Alice's five siblings, with one-fifth going to each family.

[¶ 3] The original will appointed Herbert as personal representative and as co-trustee with the Merrill Trust Company. A codicil to the will signed in 1975 made Herbert sole trustee. There is no provision in the will or codicil for payment of the trustee, but Herbert testified that he and Alice had an oral agreement that he would be paid 5% of the value of the trusts. Over the course of their existence, the trusts paid Herbert $18,641 in fees.

[¶ 4] Alice died in 1975. Herbert acted as personal representative of her estate, and then acted as trustee from 1976 until

the final distribution of trust assets in 1992. At the time the trusts were created, the value of the assets was $93,484. At the time of final distribution, the value was $367,046.

[¶ 5] Mary died in 1988, and Frances in 1989. Frances had one child, Donald Bridges, who died seven weeks before his mother. Although there were two separate trusts, Herbert waited until after both Mary and Frances died to distribute the trusts' proceeds. He made a partial distribution in 1990 of $210,000, and a final distribution in 1992 of $39,330. No assets remained in trust thereafter.

[¶ 6] Herbert interpreted Alice's will according to his understanding that Alice did not intend to leave devises to generations beyond her nieces and nephews. He therefore did not make any distributions to the Bridges Estate. He viewed Donald's dying after Alice (and Mary) but before Frances as creating a lapsed legacy, and distributed Donald's one-fifth share according to the intestacy statute. Alice's nieces and nephews, including Herbert, each received $3626 as their intestacy share. Donald's daughter, Donna Ames, and son, Robert Bridges, each received $1527 as their intestacy share.

[¶ 7] Before making the distributions, Herbert did not consult an attorney outside his immediate family, nor did he petition the Probate Court for instructions pursuant to 18–A M.R.S.A. § 7–201 (1998), *repealed by* P.L.2003, ch. 618, § B–10 (effective July 1, 2005).[1]

[¶ 8] Donna brought an action in Probate Court to construe the will and for a declaratory judgment. She also contested the amount of trustee fees paid to Herbert and sought attorney fees. Dorothy Bridges, personal representative of the Bridges Estate, was later added as petitioner.

[¶ 9] A hearing was held on September 29, 1997. The Probate Court did not issue its decision until four years later, on October 4, 2001. The court determined that Herbert had erred in his interpretation of Alice's will, concluding that the terms unambiguously provided that Donald's share had not lapsed, but had vested upon Alice's death. The court awarded Donald's estate $46,811, plus interest of 5% per annum from July 5, 1990.

[¶ 10] The court left the issue of trustee fees open so that Herbert could present additional evidence regarding whether the fees he had been paid were reasonable pursuant to 18–A M.R.S.A. § 7–205 (1998), *repealed by* P.L.2003, ch. 618, § B–10 (effective July 1, 2005). The court also anticipated that Herbert would need to seek the court's assistance in recouping the Bridges Estate's distribution from the other trust beneficiaries. *See* 18–A M.R.S. §§ 3–909, 3–1006 (2005).

[¶ 11] Six months later, when no distribution had been made to the Bridges Estate, and Herbert had not sought assistance from the court in collecting the amount of the judgment from other trust beneficiaries, the Bridges Estate filed a petition to surcharge Herbert individually for the full amount of the judgment, including interest, on the ground that he had failed to observe the standard of care required of a trustee pursuant to 18–A

---

1. The provisions of the Probate Code related to trusts were substantially repealed in 2003, and replaced by the Legislature's enactment of the Uniform Trust Code. P.L.2003, ch. 618, § A–1 (effective July 1, 2005) (codified at 18–B M.R.S. §§ 101–1104 (2005)). The Probate Court correctly applied the provisions of the Probate Code adopted in 1981, even though Alice died in 1975, because the Probate Code applies to any proceedings "then pending or thereafter commenced regardless of the time of the death of decedent." 18–A M.R.S. § 8–401(b)(2) (2005).

M.R.S.A. § 7–306 (1998), *repealed by* P.L. 2003, ch. 618, § B–11 (effective July 1, 2005). The petition also requested that Herbert be ordered to repay the trustee fee that had been paid, and to pay the Bridges Estate's attorney fees.

[¶ 12] After a hearing, the Probate Court surcharged Herbert individually the amount owed to the Bridges Estate, including the interest; approved the $18,641 in trustee fees as reasonable; and ordered Herbert to pay $937 in attorney fees, representing amounts incurred due to delays caused by Herbert, instead of the amount in excess of the $11,000 requested.

[¶ 13] Herbert appeals the judgment construing the will in favor of the Bridges Estate and surcharging him individually. The Bridges Estate cross-appeals from the award of trustee fees and the denial, in large part, of its request for attorney fees.

## II. DISCUSSION

### A. Construction of the Will

[¶ 14] Herbert contends that the Probate Court erred in determining that the will unambiguously provides that Donald Bridges's one-fifth share vested upon Alice's death. He argues that the will, read as a whole, indicates that Alice intended that the trust residue be distributed to her nieces and nephews, but not to subsequent generations.

[¶ 15] We review a court's interpretation of a will de novo. *See Estate of Lord,* 2002 ME 71, ¶ 10, 795 A.2d 700, 703. The Probate Code provides that "the intention of a testator as expressed in his will controls the legal effect of his dispositions." 18–A M.R.S. § 2–603 (2005). "A court must interpret the will within the four corners of the document but may use the context of the entire will to interpret specific sections." *Estate of Wilson,* 2003 ME 92, ¶ 11, 828 A.2d 784, 786. "A court may resort to extrinsic evidence to discern the intention of the testator if the will is ambiguous." *Id.*

[¶ 16] The Probate Court concluded that the will is unambiguous, and that the following clause, found at Article III, ¶ 1(a)(1)(a), provides that Donald's one-fifth share vested upon Alice's death:

Upon the death of the survivor of the beneficiary and me the Trustees shall distribute of that trust the principal, as then constituted, and any undistributed income as follows:

(a) [O]ne fifth in equal shares to the children who survive me of my sister, Frances S. Bridges, (but not to any of the descendants of any of them who do not survive me).[2]

[¶ 17] The court determined that the word "me" in the clause "children who survive me" plainly refers to Alice. Herbert argues that, looking at the will as a whole, it is ambiguous as to whether "me" refers to Alice or the lifetime trust beneficiaries.

[¶ 18] Contrary to Herbert's contentions, review of the entire document does not create ambiguity in the clause that dictates when the residual interest in the trust was to vest. As the Probate Court determined, the language plainly reflects the intent that a one-fifth share would go to the children of Frances who survive Alice. The other clauses that Herbert points to do not specifically apply to distribution of the trust residue, and do not demonstrate a generalized intent that nothing be devised to subsequent generations.

---

**2.** There are four additional clauses specifically allocating a one-fifth share to the children of each of Alice's other brothers and sisters.

[¶ 19] Herbert also argues that the Probate Court should have reformed the will because the evidence shows that he made a clear error in drafting.[3] The evidence shows, he contends, that he failed to transcribe the will accurately to reflect Alice's intent that in order to take, the beneficiaries of the trust residue had to survive both Alice and the lifetime trust beneficiaries.

[¶ 20] We have stated that a Probate Court "may modify testamentary trust provisions where the modifications (1) relate to administrative, as opposed to dispositive, provisions, (2) are required by 'necessitous circumstances,' and (3) are consistent with the settlor's primary intent." *Estate of Burdon–Muller,* 456 A.2d 1266, 1271 (Me.1983). The clause Herbert seeks to modify is dispositive, not administrative. Further, the proposed modification is inconsistent with Alice's intent, discerned from the language of the will, regarding distribution of the trust residue.

B. Surcharge of the Trustee

[¶ 21] Herbert contends that the circumstances of this case do not warrant surcharging him personally for the amount of the judgment plus interest.

[¶ 22] A trustee has a general duty "to administer a trust expeditiously for the benefit of the beneficiaries," and to "keep the beneficiaries of the trust reasonably informed of the trust and its administration." 18–A M.R.S.A. §§ 7–301, 7–303 (1998), *repealed by* P.L.2003, ch. 618, § B–11 (effective July 1, 2005). A trustee is required to use good faith and prudence consistent with this duty, and "must take care to enlighten his judgment." *Estate of Baldwin,* 442 A.2d 529, 532 (Me.1982).

[¶ 23] Pursuant to 18–A M.R.S.A. § 7–306, a trustee could be held personally liable for torts committed in the course of trust administration. That section provided, in relevant part:

(b) *A trustee is personally liable* for obligations arising from ownership or control of property of the trust estate or for *torts committed in the course of administration of the trust estate only if he is personally at fault.*

(c) Claims based on contracts entered into by a trustee in his fiduciary capacity, on obligations arising from ownership or control of the trust estate, or on torts committed in the course of trust administration may be asserted against the trust estate by proceeding against the trustee in his fiduciary capacity, whether or not the trustee is personally liable therefore.

(d) The question of liability as between the trust estate and the trustee individually may be determined in a proceeding for accounting, surcharge or indemnification or other appropriate proceeding.

*Id.* (emphasis added).

[¶ 24] Herbert argues that there is no precedent for surcharging a trustee for distributing trust assets according to an allegedly incorrect interpretation of a will that he, in good faith, believed was consistent with the intent of the testator. And, he contends, the cases in which this Court has upheld or ordered surcharge all involve mismanagement of trust assets, dis-

---

**3.** On this issue, the Probate Court stated: "The Respondent is really asking the Court to rewrite the will to ignore the plain meaning of the word 'me' in favor of an interpretation that is consistent with [his] version of Alice's intent." The court declined to do so because, it found, "the suggestion that the plain language of the will does not reflect the testator's intent, comes not from the instrument, but rather from the scrivener."

honesty or self-dealing, none of which is present in this case.[4]

[¶ 25] While we have upheld or ordered surcharges predominantly in cases involving intentional conduct or misuse of trust assets, we have determined on at least one occasion that a surcharge was appropriate when a trustee was negligent. *See Estate of Baldwin,* 442 A.2d at 529, 536 (remanding for surcharge when bank/personal representative failed to make prompt investigation of economic condition of an ongoing business that was the main asset of the estate).

[¶ 26] Herbert knew that the language of the will did not reflect the manner in which he chose to distribute the assets, and he proceeded with the distribution without regard to the interests of the Bridges Estate, and without seeking instructions from the Probate Court or legal advice outside the family. His conduct constitutes a breach of the duties he owed to the beneficiaries; thus, a surcharge is authorized pursuant to section 7–306.

C. Surcharge of Interest

[¶ 27] The Probate Court surcharged Herbert for interest on the Bridges Estate's share in the amount of 5% per year, from 1990 to the present. The amount of interest now exceeds $35,000. Herbert contends that he should not be held personally responsible to pay interest for the entire period of time that this case has languished in the Probate Court.[5]

[¶ 28] Title 18–A M.R.S. § 3–904 (2005) authorizes interest on devises as follows:[6]

General pecuniary devises bear interest at the legal rate of 5% per year beginning one year after the first appointment of a personal representative until payment, unless a contrary intent is indicated in the will or is implicit in light of the unproductive or underproductive nature or decline in value, during the administration of the estate, of the portion of the estate out of which such devise is payable.

[¶ 29] The Probate Court surcharged Herbert for the interest because (1) he knew about his potential liability since June of 1992, when the petition to construe the will was filed; (2) he has benefited from the use of his distributions from the estate since 1990; (3) he made no effort to retrieve distributions from other beneficiaries; and (4) he improperly delayed distribution of trust proceeds until after the deaths of both lifetime beneficiaries.

[¶ 30] Herbert contends that the award of more than $35,000 in interest is disproportionate to the extent that he had use of

---

4. *See, e.g., Estate of Wilde,* 1998 ME 55, ¶¶ 3, 12, 708 A.2d 273, 274, 277 (remanding for entry of appropriate damages award against trustee who breached fiduciary duty by failing to turn assets over to trust); *Estate of Whitlock,* 615 A.2d 1173, 1178–79 (Me.1992) (holding personal representative who induced beneficiaries to sign distribution agreement based on misrepresentation breached fiduciary duty is personally responsible for attorney fees and costs); *Estate of Stowell,* 595 A.2d 1022, 1026 (Me.1991) (remanding for a surcharge of trustee for profits from investment made with unauthorized loans from trust assets).

5. This case rivals, in sheer length of time in litigation, the celebrated fictional case of *Jarndyce v. Jarndyce,* in which Charles Dickens, in an apparently unexaggerated description of the procedure of the old Court of Chancery, tells how the little boy plaintiff, who had been promised a new hobby horse when the case was finished, grew up, bought a real horse and rode away, and still the case droned on. CHARLES DICKENS, BLEAK HOUSE 6 (Modern Library ed.2002) (1853).

6. Neither party contests the rate applied by the Probate Court pursuant to 18–A M.R.S. § 3–904 (2005).

the funds during the period of delay; the Probate Court's penalizing him for failing to recoup the amounts from other beneficiaries is unfair because they either lacked the ability to repay or had passed away since 1992; and penalizing him for the Probate Court's unexplained delays in issuing its decisions and the petitioner's failure to prosecute the case is likewise unfair.

[¶ 31] The general purpose of awarding prejudgment interest is to compensate the judgment creditor for the delay caused by litigation. *See Moholland v. Empire Fire & Marine Ins. Co.*, 2000 ME 26, ¶ 6, 746 A.2d 362, 365. An award of post-judgment interest is made to ensure that "the award of just compensation will not be diminished by delay in payment." *Id.* ¶ 7.

[¶ 32] It is undisputed that the Bridges Estate is entitled to interest on its one-fifth share of the trust proceeds; the only issue is whether Herbert should be required to pay the amount personally. While we recognize that there have been significant periods of unexplained delay in the course of this litigation, the Probate Court's reasons for holding Herbert personally responsible for the delay in payment have support in the record. In addition, there is no evidence that any period of delay resulted from want of prosecution by the Bridges Estate; the value of the Bridges Estate's share of the trust residue has diminished over time; and, by Herbert's own admission, the amount of interest would be difficult, if not impossible, to recoup from other trust beneficiaries at this late date. The Probate Court did not err in surcharging Herbert for the full amount of interest.

D. Cross Appeal

[¶ 33] In its cross appeal, the Bridges Estate challenges the award of trustee fees to Herbert, and the award to it of only a fraction of its attorney fees. Both an award of trustee fees, *Estate of Stowell*, 595 A.2d 1022, 1027 (1991), and an award of attorney fees, *id.* at 1026, rest within the sound discretion of the Probate Court. We find no abuse of that discretion in this case.

The entry is:

Judgment affirmed.