2008 ME 13

**Wanda J. FINCH**

v.

**H. Craig HIGGINS.**

Supreme Judicial Court of Maine.

Argued: Nov. 7, 2007.
Decided: Jan. 24, 2008.

Frank K.N. Chowdry, Esq. (orally), Jonathan T. Nass, Esq., Jensen Baird Gardner & Henry, Portland, ME, for the appellant.

Jennifer Riggle, Esq. (orally), Germani & Riggle, LLC, Portland, ME, for the appellee.

Panel: SAUFLEY, C.J., and CLIFFORD,* ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

PER CURIAM.

[¶ 1] H. Craig Higgins appeals from orders entered by the District Court holding Higgins in contempt (Portland, *Cantara, J.*) and attaching assets (Portland, *Beaudoin, J.*). We affirm the judgments and impose sanctions against Higgins and his attorney for filing a frivolous appeal.

[¶ 2] In February 2006, Wanda J. Finch moved to modify the child support agreement she had with Higgins. In connection with that motion, Finch served Higgins with extensive discovery requests that would have disclosed his assets, liabilities, and relationship to any trust. Higgins was notified of Finch's motion and discovery requests, but never responded to them or to Finch's motion to compel. Despite the court's order granting the motion to compel, he had failed, as of the date the appeal was argued before us, to respond to interrogatories or to furnish requested documents. The court ruled that continued failure to reply would result in sanctions.

[¶ 3] In November 2006, a hearing was held on the issue of child support modification. Higgins was given timely notice of this hearing, but did not appear. By the court date, he had still not furnished any of the financial information or documentation requested in discovery. In the absence of this information and with the nonappearance of Higgins himself, the magistrate found that Higgins's gross income was $585,000 annually, and entered a default judgment against Higgins. Based on this income, the magistrate assessed Higgins weekly child support payments of $1068.86, substantial arrears, and legal fees. Higgins did not appeal the order of support, nor did he file a motion for relief. Higgins also failed to make child support payments in accord with the order. At oral argument, his attorney stated that he has only made payments totaling in "the hundreds of dollars."

[¶ 4] In January 2007, Finch filed a motion for contempt, a motion to enforce court order, and a motion for attachment and trustee process. Higgins was duly served with these motions, but failed to make any written response to them. Faced with the possibility of incarceration, Higgins finally appeared in court for a hearing on the motion for contempt. After the hearing, the court allowed Higgins to submit a late memorandum on the motion for attachment.

[¶ 5] In March 2007, the court entered an order granting Finch's motion for attachment against real property held by the Higgins Family Irrevocable Trust and

---

* Although not available at oral argument, Justice Clifford participated in this opinion. *See* M.R.App. P. 12(a) (stating that a "qualified justice may participate in a decision even though not present at oral argument").

bank accounts of Development Services, Inc. (DSI).[1]

[¶ 6] In the same month, the court issued an order finding Higgins in contempt. The order noted that Finch proved that Higgins had failed to make child support payments required by the December 2006 order. The court sentenced Higgins to ninety days incarceration, to be stayed day to day while Higgins purged himself of the contempt by making scheduled payments to Finch. Notwithstanding his persistent and contumacious refusal to provide discovery or any information regarding his income and assets, Higgins filed a motion for findings of fact and conclusions of law, asking the court for findings on his ability to comply with the court order to pay child support, and on his income or assets within his control that would enable him to comply with the court order. The court, acting well within its discretion given Higgins's obstinate refusal to deliver such information to Finch, found explicitly that Higgins did have the means to comply. Higgins then appealed the court's contempt order to us. We affirm the judgments and, because the appeal is frivolous, impose sanctions against Higgins and his attorney.

[¶ 7] Higgins argues that the District Court erred by holding him in contempt without the means to purge the contempt and by ordering attachment of assets that he did not control. Higgins, however, failed to preserve these arguments when he failed to appear at scheduled court dates to determine child support. Only when Higgins was threatened with contempt did he first appear in court.

Higgins has also failed to respond to discovery requests that would have revealed his income and disclosed the location of his assets.

[¶ 8] Higgins's failure to appear in court and respond to discovery requests regarding his financial status prevents him from successfully appealing a finding of contempt based on an order for child support.

[¶ 9] For the above reasons, we find that the District Court neither abused its discretion nor erred when it found Higgins in contempt and when it attached his assets. *Liberty v. Liberty*, 2001 ME 19, ¶ 11, 769 A.2d 845, 847; *Weiss v. Brown*, 1997 ME 57, ¶ 7, 691 A.2d 1208, 1210.

[¶ 10] Moreover, Higgins's brief to us contained a number of arguments that are totally without merit. We here mention a few representative failings. The first sentence of Higgins's brief sets the tone: "This case involves a court overstepping its jurisdiction by seeking coercive imprisonment and attachment of assets outside the scope of this litigation in an attempt to judicially bully reconciliation of the irreconcilable."

[¶ 11] One argument made in the brief is that finding Higgins in contempt for not paying child support was not in the best interests of his and Finch's child. What was not in the child's best interest was Higgins's failure to pay the court-ordered child support or, if he truly could not afford to do so, failure to disclose information to the court demonstrating an inability to pay, which he in fact failed to do. Higgins's attorney went on to write

---

1. Finch claimed that Higgins created the Trust and was its primary beneficiary, and fraudulently transferred his North Yarmouth home into the trust. She also claimed that Higgins was the true owner of DSI, but took steps to hide that fact and used DSI to shield his income. Higgins claimed that his interest in the Trust was merely contingent and so unattachable, and that he was merely an employee of DSI and had never been a shareholder or director. On May 21, 2007, the District Court vacated the attachment order as it pertained to DSI.

that "the best interests of the child are met by establishing an appropriate child support arrangement that balances the actual income and assets of the Defendant with the needs of the child." That is true. It is also true that Higgins not only failed to provide the court with information vital to determine his actual income, but also failed to appear at the hearing scheduled for that purpose. In his absence, the court determined his income and established an appropriate child support arrangement. The court performed its function correctly; Higgins flouted the process, and his attorney assisted him in doing so.

[¶ 12] Higgins also argues that Finch had to present her arguments for attachment in the form of a complaint. M.R. Civ. P. 4A(c) clearly shows that this is incorrect. He also implies that the District Court has exceeded its jurisdiction when it clearly has not, and he argues that 14 M.R.S. § 1955 (2007) applies when it clearly does not. The attorney also argues that the District Court could not rely on the magistrate's unappealed determination of Higgins's income, i.e., that the District Court was responsible for fact finding and "impermissibly delegated" that task to the magistrate. In making this argument, the attorney relies on 4 M.R.S. § 183(1)(F) (2007), which has nothing to do with whether a District Court can rely on a magistrate's findings.

[¶ 13] When asked at oral argument whether it was true that Higgins had not provided the Trust documents to opposing counsel, his attorney stated it was his understanding that the Trust documents had never been provided but the issue did not arise "during [his] watch." Higgins's attorney is on the watch now, and he is responsible for responding to Finch's appropriate discovery requests. At a minimum, he was required not to advance an argument against the child support order when he knew or should have known his client did not provide crucial documents to opposing counsel and to the court. It is in the best interests of Higgins's child for him to be responsive to opposing counsel's requests and to attend hearings.

[¶ 14] Finally, at oral argument counsel for Higgins acknowledged that critical discovery was never provided during his representation of Higgins. It is evident that there is no basis for appealing a factual finding of a court when his client resolutely and consistently failed, even in the face of court orders, to turn over the applicable factual financial information at issue. Nothing in Higgins's brief even attempts to demonstrate that he could not meet his child support obligations. Incredibly, he appears to argue that without his cooperation he cannot be forced to pay.

The entry is:

Judgment affirmed. Pursuant to M.R.App. P. 13(f), Finch is awarded treble costs and reasonable expenses, including attorney fees, to be paid by Higgins. In addition, Attorney Frank Chowdry is hereby ordered to pay the first $3500 of Finch's attorney fees and costs. Remanded to the District Court to determine the amount of costs, expenses, and attorney fees incurred by Finch in defending this appeal. Higgins is furthermore ordered to abide by the District Court's March 22, 2007 order and immediately pay the court-ordered child support mandated therein or surrender himself for incarceration as ordered. This mandate shall issue forthwith.