STATE OF MAINE
CUMBERLAND, ss.

H. CRAIG HIGGINS,

Plaintiff

v.

MAINE DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

Defendant

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-12-41
T T W—CUM-2/5/2013

ORDER

STATE OF MAINE
Cumberland, ss, Clerk's Office

FEB 05 2013

RECEIVED

Before the court is an appeal by H. Craig Higgins from a June 29, 2012 decision by the Maine Department of Health and Human Services affirming the department's decision to seek revocation of licenses possessed by Higgins because of his failure to comply with an existing child support order. (R. Tab A).

Procedural History

The child support owed by Higgins has a long history that has already resulted in various court proceedings and two trips to the Law Court. In December 2006 Higgins was ordered to pay $1,068.86 per week in child support to Wanda Finch for the benefit of the parties' minor son Jameson. In a March 22, 2007 order Higgins was held in contempt for failing to make those payments, with the court (Cantara, J.) finding that Higgins had the ability to work, that he had taken steps to hide or shield assets, and that Higgins's testimony as to the reasons he had not complied with his child support obligations was not credible. Finch v. Higgins, Docket No. POR-FM-94-0074, order dated March 22, 2007 and findings dated April 10, 2007. That order, which resulted in a 90 day sentence to the Cumberland County Jail, was affirmed by the Law Court on

January 24, 2008. Finch v. Higgins, 2008 ME 13, 953 A.2d 1142. Higgins was ordered to pay treble costs and attorneys fees, and his counsel was ordered to pay part of the sanctions imposed.

After a further contempt order on August 28, 2008 (Powers, J.) and a bankruptcy filing, the district court heard a motion to modify Higgins's child support obligation to Finch in September 2010.[1] In January 2011 Magistrate Kidman issued an order determining that although Higgins's financial circumstances had changed since 2006, he was voluntarily underemployed as of September 2010 and had been disingenuous in his testimony regarding his efforts to find work and his earning capacity. Based on imputed income, Magistrate Kidman found that Higgins was obligated to pay Wanda Finch $151.40 per week in child support. Finch v. Higgins, Docket No. POR-FM-94-074, order dated January 28, 2011. That order was affirmed by the District Court (Eggert, J.) on February 24, 2011 and by the Law Court on September 29, 2011. Finch v. Higgins, Mem. Dec. 11-142.

As of March 24, 2011, Higgins's child support arrearage to Finch was determined to be $ 90,376.53. (R. Tab D-5).

In November 2011 the District Court (Powers, J.) held a joint hearing on motions for contempt filed by Finch and by the mother of Higgins's other child. In his subsequent order Judge Powers noted that Higgins had suffered a work-related injury in January 2011 and had undergone surgery in September 2011 for digestive issues. Based on the testimony of Higgins's doctor, Judge Powers found that Higgins was regaining his ability to work but there was no clear proof that he had the ability to comply with the outstanding child support orders as of the November 2011 hearing and

---

[1] Higgins also owes child support to Mary Pat Conroy with respect to another child that he fathered. This appeal, however, only relates to his child support obligation to Wanda Finch.

2

therefore denied the motions for contempt. <u>Finch and Conroy v. Higgins</u>, POR-FM-94-74 and 05-1258, order dated December 12, 2011. (R. Tab C-1). In his order Judge Powers stated, "[T]his order is not meant to be an excuse for continued nonpayment."

Wanda Finch subsequently sought the assistance of the Maine Department of Health and Human Services in enforcing her child support order. <u>See</u> 19-A M.R.S. § 2202(1). In December 2011 the department sent a letter to Higgins stating that it calculated his existing child support arrearage at $90,272.32, with an additional $ 2,240 owed for dental, health, and eye care. The notice offered Higgins an administrative hearing if he contended that he did not owe that amount. (R.Tab D-2).[2]

On April 5, 2012 the department followed up with a notice that it intended to seek revocation of Higgins's licenses under 19-A M.R.S.§ § 2201-02. (R. Tab D-4). Higgins currently possesses a driver's license. Higgins, through counsel, requested a hearing by letter dated May 2, 2012 (R. Tab HO-1), and an administrative hearing was held on May 31, 2012. (R. Tab B). On June 29, 2012 the hearing officer issued a decision affirming the department's decision to seek revocation of Higgins's license. (R. Tab A). Higgins then appealed that decision to this court.

After the appeal was filed the court granted the department's unopposed motion to take additional evidence pursuant to Rule 80C(e). This was because under 19-A M.R.S. §§ 2201(2) and 2202(3) the issues at an administrative hearing are limited, but the obligor may preserve additional issues for appeal. On February 1, 2013 the court held a

---

[2] Jameson Higgins reached the age of 18 in August 2011. As a result the current proceeding relates to his father's child support arrearage rather than to any current support obligation.

3

hearing at which the parties, including Ms. Finch, had the opportunity to submit additional evidence.[3]

Discussion

There is no dispute in this case that the hearing officer correctly determined that Higgins is obligated to pay child support to Wanda Finch under the existing child support order dated January 28, 2011 and that he is not in compliance with that order. Those are the only two issues that the hearing officer had the jurisdiction to decide under 19-A M.R.S. §§ 2201(2) and 2202(3). The dispute in this case concerns the scope of the additional issues that can be raised before the court after a hearing held pursuant to a motion to take additional evidence. Moreover, despite Higgins's lamentable history of past noncompliance, he is still entitled to relief if he can show that the department has not followed proper procedure or that its intent to revoke his license cannot be sustained upon the present record.

A. Statutory Framework

Both 19-A M.R.S. §§ 2201 and 2202 provide that a child support obligor can comply with an order of support with respect to arrearages by "paying all past-due support or, if unable to pay all past-due support and a periodic payment for past-due support has not been ordered by the court, by making periodic payments in accordance with a written payment agreement with the department." 19-A M.R.S. §§ 2201(1)(G), 2202(2)(H).

---

[3] At that hearing the parties informed the court that the department has not taken any further action to revoke Higgins's licenses pending this court's decision on the appeal.

4

Other subsections in sections 2201 and 2202 further address the ability of a child support obligor who is presently unable to pay all past due support to come into compliance by executing a written payment agreement with the department. 19-A M.R.S. §§ 2201(1-A), 2202(1-A). Before executing such an agreement the obligor must make full disclosure and provide appropriate documentation of the obligor's financial circumstances. After such disclosure, the department "shall determine the obligor's ability to pay past-due support and request the obligor to execute a written payment agreement consistent with the obligor's ability to pay . . . " Id.

When an administrative hearing is held after the department has given notice of intent to seek revocation of licenses, the statute provides that the issues to be determined at the hearing are limited to whether the obligor is required to pay child support and whether the obligor is in compliance with an order of support. However, the obligor can raise – and the Superior Court can consider on any appeal – "additional issues, including the reasonableness of a payment agreement in light of the obligor's current circumstances." 19-A M.R.S. §§ 2201(2), 2201(4), 2202(3), 2202(5).

Based on the above statutory language, Higgins makes several arguments. The first is that the department cannot seek to revoke his license until it has offered him a payment agreement. The second is that because Higgins has no ability to pay, the only reasonable payment agreement would be an agreement calling for no payments. The third is that in any event this court should consider Higgins's ability to pay in determining whether to uphold the department's decision.

On the first two issues, while the statute states that the department shall request the obligor to enter into a payment agreement, that requirement only exists after an obligor has made full disclosure of his financial circumstances. See 19-A M.R.S. §§ 2201(1-A), 2202(1-A). In this case, Higgins never undertook to make full disclosure.

5

The notice sent to Higgins gave him the option of contacting the department's child support enforcement office in order to make a payment agreement. (R. Tab D-4, p. 2). Higgins did not contact the department about a payment agreement. Instead he simply requested an administrative hearing. See May 2, 2012 letter from Jed French, Esq. contained in R. Tab HO-1. Moreover, Higgins never suggested that if a payment agreement were offered, he would be able to pay even a paltry amount. Instead, at the administrative hearing Higgins stated that he thought that the arrearage judgment (R. Tab D-5) had been "superseded" by Judge Powers's denial of the contempt motions in December 2011. See R. Tab B at 33.

At the February 1, 2013 hearing before this court counsel for Higgins argued that a payment agreement should have been offered and that the only reasonable payment agreement would have been a payment agreement calling for no payments to be made. The court cannot accept this interpretation of the statute. A payment agreement calling for no payments is not a payment agreement at all. If the Legislature had wanted to authorize the department to excuse an obligor from making any payments, it could have said so. No such language is contained in sections 2201 or 2202.

The remaining question is whether the court can consider inability to pay, separate and apart from the reasonableness of any payment agreement, on an appeal under sections 2201(4) and 2202(5). Given the language in those subsections that the court can hear and determine issues raised at the administrative hearing, "including" the reasonableness of a payment agreement, the court concludes that the reasonableness of a payment agreement is not the only issue that can be independently determined by the court. See Committee Amendment A to L.D. 1727, 116th Legislature, 2d Sess. (1994) (obligor "may raise any other issues, including reasonableness of a payment agreement" and raising other issues "preserves them for appeal").

6

B. <u>Ability to Pay</u>

Based on the administrative record and the evidence offered at the hearing, the court finds that the record does not establish that Higgins has a complete inability to pay. This is true regardless of whether Higgins has the burden of proof on this issue (which makes the most sense because the relevant information is within his knowledge and control) or whether the burden is placed on the department. The reason is two-fold. First, the department is entitled to consider not just an obligor's income and assets but also his ability to borrow. See, e.g., Child Support Enforcement Manual, Chapter 22. Section 3 (DHHS EX. 1 at February 1, 2013 hearing).

Higgins has consistently shown that regardless of his circumstances, he retains the ability to borrow from his family and others. Magistrate Kidman's order states that Higgins was given $50,000 by his father to pay his attorney's fees in the proceeding before her.[4] On this appeal and at the February 1, 2013 hearing before this court Higgins was represented by retained counsel, and there was evidence at the hearing that this is also being financed by his father. Finally, Higgins makes the small monthly payments he owes as current child support to Mary Pat Conroy for his other son by borrowing those sums from his father. DHHS Ex. 6 at February 1, 2013 hearing.

The evidence before the court also does not support a conclusion that Higgins is currently unable to engage in any work. Judge Powers's December 2011 order – on which Higgins relies – stated that Higgins had recently regained some capacity to work and that the court expected that he would soon have the ability to pay his outstanding child support orders. (R. Tab C-1; DHHS Ex. 4 at Feb. 1, 2013 hearing). It bears emphasis

---

[4] To the extent that Higgins argues that he was "given" that money rather than borrowing it, the court is unwilling to give any weight to Higgins's characterization of that transaction when that characterization is solely within the control of Higgins and his father.

that Judge Powers's December 2011 order was issued subsequent to both the work-related injury Higgins suffered in January 2011 and the auto accident in which he was involved later that same month. See R. Tab B at 16. In addition, the only medical evidence offered at the May 31, 2012 administrative hearing in this case (R. Tab C-2) stated that as of May 1, 2012 Higgins "may participate in education training but is not ready for physical labor." R. Tab C-2 (emphasis added).

Given that much of the work activity which Higgins performed prior to any of his physical injuries (e.g., legislative work, land development and real estate management, and management of multiple employees[5]) was the kind of work that does not require physical labor, the court concludes that on this record Higgins has the ability to engage in some gainful employment and therefore has the ability to pay some amount toward the child support arrearage he owes Ms. Finch.

Accordingly, the department's decision to seek revocation of Higgins's licenses is affirmed.

The entry shall be:

The June 29, 2012 decision of the Department is affirmed. To the extent that separate findings are necessary, the court also concludes based on the administrative record and the additional evidence presented on February 1, 2012 that Higgins does not have a total inability to pay any amount toward his arrearage and that the Department is therefore entitled to seek the revocation of his licenses.

The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: February 4, 2013

_____
Thomas D. Warren
Justice, Superior Court

_____
[5] See Magistrate Kidman's January 28, 2011 order in POR-FM-94-74 at pp. 2-3 (R. Tab D-6; DHHS Ex. 4 at Feb. 1, 2013 hearing).

8

Date Filed  July 27, 2012    CUMBERLAND _____    Docket No. ____ AP-12-41 _____
                                  County

Action ___ 80C COMPLAINT _____


H CRAIG HIGGINS                              DEPARTMENT OF HEALTH & HUMAN SERVICES




                                        vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| JED FRENCH ESQ<br>POWERS & FRENCH<br>209 MAIN ST<br>FREEPORT ME 04032 | CARLOS DIAZ, AAG<br>OFFICE OF THE ATTORNEY GENERAL<br>6 STATE HOUSE STATION<br>AUGUSTA, ME 04333-0006 |
| Date of<br>Entry | |