MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2016 ME 138
Docket:        Pen-15-440
Submitted
  On Briefs:   May 26, 2016
Decided:       August 30, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

FREDERICK B. LINCOLN et al.

v.

HAROLD BURBANK II et al.


ALEXANDER, J.

[¶1]  Harold Burbank II appeals from a judgment of the Superior Court (Penobscot County, *A. Murray, J.*) (1) finding in favor of the owners of neighboring properties on their claims for a prescriptive easement, declaratory judgment, conversion, and punitive damages;[1] and (2) finding in favor of co-owners of property with Burbank on their cross-claim for partition by sale of that property.[2]

[¶2]  Burbank is the owner of what the court found to be a 1/18 interest in a coastal property in Northport (the "Burbank property").  The Burbank

---

[1]  The court denied the neighbors' claim for trespass against Burbank.  The neighbors do not appeal that decision.

[2]  The court found in favor of the co-owners on Burbank's cross-claim seeking an injunction precluding the co-owners from entering into agreements with the neighbors to convey an easement in the property at issue in this suit.  Burbank does not appeal from that judgment.

2

property is owned in joint tenancy by fourteen owners, all of whom were defendants at trial. At the trial, Harold Burbank II acted as counsel[3] for four defendants: himself, his father Harold Burbank I, his sister Lori Darnell, and his brother David Burbank (collectively "the Burbank Defendants").

[¶3] The plaintiffs—Frederick B. Lincoln, Norman Moscow, Eleanor Moscow, Joan R. Kosel, Bruce C. Gerrity, John Fleming, and Suellyn Fleming (collectively "the Neighbors")—are the owners of a cluster of properties neighboring the Burbank property, who successfully asserted that they had acquired an easement over a portion of the Burbank property.

[¶4] The other ten owners of the Burbank property—Elizabeth Smith as Trustee of The Russell Smith Estate Reduction Trust, Sandra Tozier, Suzette Cyr, Christopher Smith, Nathanial Jennings, Susannah Corona, Luther Jennings, Rebeccah Jennings, Pamela Sullivan, and Sonia Burbank (collectively "the Co-owners"), were also named as defendants. The Co-owners attempted to settle with the Neighbors and later cross-claimed against the Burbank Defendants for partition by sale of the Burbank property.

---

[3] Harold Burbank II is admitted to the practice of law in Maine and Connecticut. A separate Maine law firm appeared for the part of the trial that included Harold Burbank II's testimony, perhaps to limit concern about an attorney who was also a party testifying at a trial while also representing other parties.

[¶5]  Harold Burbank II is the only party appealing.[4] He argues that

•  the evidence was insufficient to support the trial court's finding of a prescriptive easement;

•  the trial court erred and abused its discretion by granting partition by sale of the Burbank property;

•  the trial court erred as a matter of law by finding Burbank liable for conversion;

•  the trial court should have bifurcated the trials on the Neighbors' and the Co-owners' claims;

•  the Neighbors and the Co-owners lacked standing to bring their respective actions;

•  the trial court's grant of a prescriptive easement constitutes a taking in violation of the Fifth Amendment to the United States Constitution;

•  the trial court erred by declining to reopen the record and permit the testimony of an additional witness who, although present at trial, was not called to testify; and

•  the trial court failed to address several affirmative defenses.

[¶6]  The trial court issued a thorough, carefully considered judgment, supported by extensive findings and conclusions and accurate legal analysis. Because the court did not err when it granted a prescriptive easement or ordered partition by sale of the property, and because the remainder of Burbank's arguments are either improperly raised, meritless, or both, we

---

[4] All of the other Burbank Defendants indicated, after trial, that they did not wish to participate in the appeal.

4

affirm the judgment and, on separate motions of the Neighbors and the Co-owners, we order sanctions against Burbank pursuant to M.R. App. P. 13(f).

## I. CASE HISTORY

[¶7] The court found the following facts by a preponderance of the evidence, and these facts are supported by the trial record. *See Androkites v. White*, 2010 ME 133, ¶¶ 12, 14, 10 A.3d 677.

[¶8] The Burbank property in Northport has been owned by various members of the Burbank family since 1940. In 1993, Phyllis Burbank gifted the Burbank property to her nineteen then-living children and grandchildren, including Harold Burbank II, as joint tenants.[5] The gift was made by warranty deed, and the property was transferred in fee simple with no reservation of any right or interest in the property. At the same time, Phyllis Burbank executed a will leaving certain stock to a trust to be used for maintenance of the property. Phyllis Burbank died in 1996.

[¶9] The Burbank property is on Penobscot Bay, and until 2012 there were two sets of stairs on the property leading down an embankment to a beach. One set of stairs was used by Phyllis Burbank and her family. The other set of stairs, which we will refer to as "the Neighbors' stairs," led to a

---

[5] The defendants in this case are the grantees and their successors in interest.

path running over a portion of the Burbank property and onto the abutting property. The Neighbors used the path and the Neighbors' stairs to access the beach from their cottages, which are located in a group abutting or near to the Burbank property. The two sets of stairs led to opposite sides of a largely impassable gully that separates the Burbank property from the Neighbors' properties.

[¶10] The path and the Neighbors' stairs had been in place since at least the early 1930s[6] and had been used continuously by the Neighbors and their predecessors to access the beach since that time. The Neighbors and their predecessors maintained the Neighbors' stairs. A person using the path is clearly visible to people at the cottage located on the Burbank property. No owner of the Burbank property ever gave permission for the Neighbors to use the path and stairs, nor did any owner prohibit use of the path and stairs until the 1990s. At least twenty years of continuous use by each Neighbor had occurred before any signs were posted indicating a lack of acquiescence to the Neighbors' use of the path and stairs.[7]

---

[6] There was testimony that the Neighbors' stairs did not exist until the 1960s. The court specifically found that this testimony was not credible.

[7] There was testimony that a no trespassing sign was put across the path in the late 1960s. The court specifically found that this testimony was not credible.

6

[¶11] Beginning in the late 1990s, some of the owners of the Burbank property began posting no trespassing signs on the path; other owners of the Burbank property opposed posting the signs and removed them.

[¶12] In April 2012, Harold Burbank II discovered that vegetation had been removed from the Burbank property and contacted the Maine Department of Environmental Protection (DEP) and the Northport Code Enforcement Officer to ask whether the cutting constituted a violation of shoreland zoning regulations. Burbank also inquired whether it was a violation to have two sets of stairs leading to the beach on the property. Burbank persistently requested that the Town issue a notice of violation requiring that one of the sets of stairs be removed. The Town eventually issued a notice of violation in July 2012. The notice of violation required that one set of stairs be removed by August 31, 2012. The Code Enforcement Officer testified that this was the first time in his twelve years as a code enforcement officer that a landowner had self-reported a violation.

[¶13] Burbank did not communicate with the other owners of the Burbank property or the Neighbors prior to seeking and securing the issuance of the notice of violation. When they learned of the notice of violation, at least

one other owner of the Burbank property told Burbank not to remove the Neighbors' stairs.

[¶14] Burbank did not inform the DEP or the Town that the stairs had been in place prior to the enactment of the shoreland zoning regulations, or that the Neighbors had a potential claim to the stairs. When the DEP learned these facts, it informed Burbank that the stairs might constitute a legal nonconforming structure and requested that removal of the stairs be put on hold. The DEP sent a letter to the Town and a copy of the letter to Burbank suggesting that the stairs predated the 1992 enactment of Northport's shoreland zoning regulations and requesting that enforcement be put on hold. Burbank responded by suggesting that he would sue the Town if it did not continue enforcement efforts. The Town did not withdraw the notice of violation, but it did not take any enforcement action.

[¶15] In September 2012, Burbank, acting on his own, tore out and removed the stairs. Burbank did not notify the Neighbors or the other owners of the Burbank property prior to removing the stairs. The court specifically found that Burbank "used the Town to advance his own agenda to remove the [Neighbors'] stairs."

[¶16]   The Burbank property is currently owned by fourteen people. The court found that many of the owners "can no longer tolerate owning the property with certain of the other co-owners."   There had been ongoing conflicts among the owners since Phyllis Burbank's death, and family members had discussed partitioning the property since 2005 or 2006.   The trial court found that there were a number of reasons the Co-owners were seeking partition, and that the reasons "centered on perceptions that Harold Burbank II wanted to control the property, his lack of meaningful communications with others, his lack of respect for the views of the other owners of the property, and his unilateral action" in obtaining the notice of violation and tearing out the Neighbors' stairs.   The court found that there is a clear inability to communicate among the owners of the Burbank property and noted that "Harold Burbank I, while not wanting the property sold, testified that he would rather face the North Koreans at war again rather than coordinate with certain members of the family about the property."

[¶17]   The procedural history of this case is extensive and reflects approximately 125 filings by the three sets of parties.   The majority of this history is not addressed, as it is not relevant to this appeal.

[¶18]  In February 2013, the Neighbors filed a complaint against all of the owners of the Burbank property.  The complaint sought an easement across the Burbank property pursuant to several different theories and sought a declaratory judgment granting the Neighbors an easement over the existing path and the right to install and maintain stairs to the beach.  The complaint also included claims for trespass, conversion, and punitive damages against Burbank individually.

[¶19]  In April 2014, after the Co-owners entered into a settlement agreement with the Neighbors purporting to grant the Neighbors an easement over the Burbank property, the Burbank Defendants brought a cross-claim against the Co-owners, seeking an injunction to prevent the Co-owners from entering into any such agreements in the future.  In May 2014, the Co-owners brought a cross-claim against the Burbank Defendants seeking partition by sale of the Burbank property.

[¶20]  The Burbank Defendants moved to bifurcate the trial and hold separate trials on the Neighbors' claims for an easement and the Co-owners' cross-claim for partition.  The court denied this motion on the first day of the three-day bench trial that it held in May 2015.

## II. THE TRIAL COURT JUDGMENT AND APPEAL

[¶21]  On August 12, 2015, the court entered a written judgment finding for the Neighbors on their claims for an easement by prescription, conversion, and punitive damages.  The court issued a declaratory judgment granting the Neighbors an easement appurtenant across the Burbank property to access the beach by foot over the existing path and permitting them to install and maintain a set of stairs.  On the conversion claim based on removal of the stairs, the court awarded the Neighbors damages of $5,000 to be recovered from Harold Burbank II.  After finding by clear and convincing evidence that Burbank had acted with malice toward the Neighbors in removing the stairs and considering the reprehensibility of Burbank's conduct and the harm he had caused the Neighbors, the court awarded the Neighbors $15,000 in punitive damages to be recovered from Burbank.  The court found for Burbank on the Neighbors' claim for trespass.

[¶22]  On the cross-claims in the action between the Burbank Defendants and the Co-owners, the court found against the Burbank Defendants on their cross-claim for an injunction.  The court found for the Co-owners on their cross-claim for a partition by sale of the Burbank property and ordered sale of the property and division of proceeds.  Because of the

demonstrated difficulties of the property owners in cooperating with each other, the court's judgment appropriately specified a detailed process for coordinating the sale of the property.

[¶23]  After trial but before the court issued its judgment or made any findings, the Burbank Defendants filed two motions to amend the court's findings, arguing, in part, that the court should reopen the record and allow Burbank's mother—who was included on the Burbank Defendants' original witness list and was present at the trial—to testify.  The court denied these motions.  After the court issued its judgment, Burbank, acting alone, filed a motion to alter or amend the court's judgment, reasserting his argument that his mother should be allowed to testify, which the court again denied.  This appeal followed.

[¶24]  Burbank filed his brief as appellant.  Burbank's brief states facts not in the trial court record.  His brief was supplemented by supporting documents adding facts not in the trial court record.  The Neighbors and the Co-owners each filed a brief as appellees.  Burbank then filed two reply briefs totaling thirty-three pages.  The Neighbors and the Co-owners each moved to strike one or both of Burbank's reply briefs for failure to comply with M.R. App. P. 9(c), and each filed a motion, pursuant to M.R. App. P. 13(f), to

sanction Burbank for his conduct in the appeal. Burbank filed a response to the motions for sanctions, and we ordered that the motions for sanctions and to strike would be considered with the merits of the appeal.

### III. LEGAL ANALYSIS

#### A. Prescriptive Easement

[¶25] Burbank argues that there was insufficient evidence to support the trial court's finding that the Neighbors proved the elements of a prescriptive easement across the Burbank property.

[¶26] We review questions of law related to easements de novo and review a trial court's factual findings as to the elements of a prescriptive easement for clear error. *Androkites*, 2010 ME 133, ¶ 12, 10 A.3d 677. We defer to a trial court's assessment of witness credibility and resolution of conflicting testimony. *Gordon v. Cheskin*, 2013 ME 113, ¶ 12, 82 A.3d 1221.

[¶27] A party claiming a prescriptive easement must prove three elements by a preponderance of the evidence: "(1) continuous use for at least twenty years; (2) under a claim of right adverse to the owner; (3) with the owner's knowledge and acquiescence, or with a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed." *Androkites*, 2010 ME 133, ¶ 14, 10 A.3d 677; 14 M.R.S. § 812

(2015).  Adversity exists when the party "has received no permission from the owner of the soil, and uses the way as the owner would use it, disregarding [the owner's] claims entirely, using it as though [she] owned the property [her]self."  *Androkites*, 2010 ME 133, ¶ 16, 10 A.3d 677 (alterations in original).  "Acquiescence implies passive assent or submission to the use, as distinguished from the granting of a license or permission . . . .  Acquiescence is consent by silence." *Stickney v. City of Saco*, 2001 ME 69, ¶ 23, 770 A.2d 592 (citation omitted).  Either a grant of permission or an express protestation will defeat a claim for a prescriptive easement.  *See Androkites*, 2010 ME 133, ¶ 16, 10 A.3d 677; *Taylor v. Nutter*, 687 A.2d 632, 634-35 (Me. 1996).

[¶28]  Opposing the finding of a prescriptive easement, Burbank asserts four arguments on this appeal.

[¶29]  First, Burbank argues that there was insufficient evidence of the specific "nature, duration and type of use" the Neighbors made of the property for the court to find each element of adverse possession by a preponderance of the evidence.  Burbank points to several witnesses whose testimony, if found credible, might have undermined the Neighbors' claim for a prescriptive easement.  In each case, the trial court specifically explained why it did not find the testimony credible and how the court was resolving

14

apparent conflicts in the testimony. We will not interfere with the trial court's thorough analysis of abundant and often conflicting testimony. *See Gordon*, 2013 ME 113, ¶ 12, 82 A.3d 1221.

[¶30] Second, Burbank argues that there was testimony that prior owners of the Burbank property discussed their concerns regarding the Neighbors and their predecessors using the path and stairs, thus undermining the court's finding of acquiescence. Specifically, Burbank points to testimony regarding two conversations: one between two prior owners, and another between a prior owner and a neighbor who is not a plaintiff or a plaintiff's predecessor in interest and did not use the stairs or path at issue here. Because a denial of the right to use property must be communicated to the potential adverse possessor to foreclose a finding that the owner acquiesced to the adverse possessor's use, the testimony Burbank cites does not undermine the trial court's findings. *See Dowley v. Morency*, 1999 ME 137, ¶¶ 23-24, 737 A.2d 1061; *Rollins v. Blackden*, 112 Me. 459, 466-67, 92 A. 521, 526 (1914).

[¶31] Third, Burbank argues that the close neighborly relationship between the Neighbors and the current and former owners of the Burbank property precludes a finding that the Neighbors' use of the path and stairs was

adverse. When the plaintiff has used the property continuously for twenty years and the property owner acquiesced to that use, a court ordinarily may presume that the use was adverse to the owner's rights. *Androkites*, 2010 ME 133, ¶¶ 14, 17, 10 A.3d 677. When the use at issue is by family members using one another's property, however, the familial relationship precludes application of this presumption. *Id.* ¶ 18. We have never applied this reasoning to unrelated neighbors. We do not reach the question of whether to extend the blood relative exception to unrelated neighbors because the trial court, noting the lack of case law on application of the presumption in cases involving neighborly relations, specifically found adversity both by presumption and without application of the presumption, and the record supports these findings.

[¶32] Finally, Burbank argues that the court erred by failing to apply a presumption of permission. This presumption arises only when the public uses private property for recreational uses, and is inapplicable to the Neighbors' claim for a private prescriptive easement. *See, e.g.*, *Almeder v. Town of Kennebunkport*, 2014 ME 139, ¶ 29, 106 A.3d 1099; *Lyons v. Baptist Sch. of Christian Training*, 2002 ME 137, ¶ 19, 804 A.2d 364.

[¶33]   The court properly applied prescriptive easement law, and the court's finding of each element of the prescriptive easement claim by a preponderance of the evidence is supported by competent record evidence. *See Androkites,* 2010 ME 133, ¶ 12, 10 A.3d 677.   Accordingly, we affirm the court's judgment as to the Neighbors' prescriptive easement claim.

B.   Partition by Sale

[¶34]   Burbank argues that the Co-owners lacked the right to seek a partition because the deed gifting the Burbank property and Phyllis Burbank's will, when read together, demonstrate Phyllis Burbank's intent to deprive the grantees of this right.   Burbank also argues that partition is inappropriate because the deed and will create interests in the property held by his children, Phyllis Burbank's great-grandchildren.

[¶35]   Interpretation of unambiguous deeds and wills is a question of law that we review de novo. *Sleeper v. Loring*, 2013 ME 112, ¶ 10, 83 A.3d 769 (deeds); *Estate of Silsby*, 2006 ME 138, ¶ 15, 914 A.2d 703 (wills).   In both instances, we look first to the plain language of the document to determine the intent of the parties. *Silsby*, ¶¶ 15, 18 (wills); *Matteson v. Batchelder*, 2011 ME 134, ¶ 16, 32 A.3d 1059 (deeds).

[¶36]  Here, the documents demonstrate that Phyllis Burbank gifted the Burbank property in fee simple to her children and grandchildren as joint tenants with no reservation of rights or other restrictions on their ownership. This transaction was complete in 1993, three years before Phyllis Burbank's death.  Phyllis Burbank's will devised certain stock to a trust to be used for maintenance of the property, but her will makes no attempt to convey, burden, or otherwise address the Burbank property or the rights of its owners.

[¶37]  There is no reasonable interpretation of these documents that places any limitation on the rights of the owners of the Burbank property to partition the property or otherwise dispose of their interests in it.  In fact, the will appears to contemplate the possibility of a sale of the property.  In stating the conditions for termination of the trust, the will states, "Upon the death of my last surviving child and grandchild, *or upon the sale of the* [*Burbank property*] *to a person or persons not my lineal descendants*, the Trust shall terminate."  (Emphasis added.)  There is no basis for Burbank's interpretation of the deed and will as either restricting sale of the Burbank property or creating rights in the property held by Phyllis Burbank's great-grandchildren. We, therefore, affirm the trial court's grant of partition by sale.

18

## C.    Conversion

[¶38]  Burbank argues that he cannot be held liable for conversion because he acted pursuant to the Town's notice of violation when he tore out and removed the Neighbors' stairs.  We have not provided guidance on this particular point previously, and Burbank failed to produce a developed argument as to this issue.  We deem the issue waived.  *See Mehlhorn v. Derby*, 2006 ME 110, ¶ 11, 905 A.2d 290; *Casillas-Diaz v. Palau*, 463 F.3d 77, 84 (1st Cir. 2006).  We note, however, that although the Town of Northport never formally withdrew the notice of violation requiring removal of a set of stairs on the Burbank property, Burbank was aware that, at the direction of the DEP, the enforcement action had been put on hold pending resolution of issues surrounding the age and potentially grandfathered status of the stairs and the Neighbors' claim to rights in the stairs.  The evidence demonstrates that Burbank sought and obtained the notice of violation as a pretense for removal of the stairs.  He may not, in these circumstances, claim to be innocently complying with local law.  We affirm the trial court's finding that Burbank is liable for conversion.

D.    Bifurcation

[¶39]  Burbank lists as an issue whether the court abused its discretion when it refused to bifurcate the proceedings and hold separate trials on the Neighbors' claims and the Co-owners' claim for partition.  Burbank provides no further argument on this issue, and we deem this issue waived. *See Mehlhorn*, 2006 ME 110, ¶ 11, 905 A.2d 290.

[¶40]  Even if this issue were properly presented on appeal, it is meritless.  A court should consider the following factors as militating against bifurcating trials: "1) substantial identity of the parties, and the witnesses, 2) overlapping evidence, 3) relatively simple issues, 4) relative times required for litigating different issues, and 5) the absence of discernable prejudice to the parties."  *Estate of McCormick*, 2001 ME 24, ¶ 40, 765 A.2d 552.  Most, if not all, of these factors apply in this case.  It was not an abuse of discretion for the court to refuse to bifurcate the proceedings.  *See id.*; M.R. Civ. P. 42(b).

E.    Remaining Issues

[¶41]  Burbank's remaining issues are frivolous, and we do not address them.  Additionally, with the exception of his argument that the grant of a prescriptive easement constitutes a judicial taking, none of his remaining issues were properly raised.  Several of the issues were argued to the trial

court but not raised on appeal except in Burbank's reply briefs. An issue raised for the first time in a reply brief may be viewed as not preserved for appeal. *See State v. Blais*, 416 A.2d 1253, 1256 n.2 (Me. 1980); *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 239 (1st Cir. 2013) ("We have repeatedly held, 'with a regularity bordering on the monotonous,' that arguments not raised in an opening brief are waived." (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 (1st Cir. 2000))). One of the issues was raised for the first time in a response to a motion made before us during the appellate process.

[¶42] Accordingly, we affirm the trial court's judgment.

## IV. MOTIONS ON APPEAL

A. Motion to Strike Reply Briefs

[¶43] The Neighbors and the Co-owners each moved to strike one or both of Burbank's two reply briefs. Burbank did not file any timely opposition to the motions to strike.

[¶44] Rule 9(c) of the Maine Rules of Appellate Procedure provides that a reply brief may not exceed twenty pages without prior approval. Taken together, Burbank's reply briefs constitute thirty-three pages of reply. Burbank did not receive leave to exceed the page limit. Rule 9(c) further provides that upon filing of the reply brief, "[n]o further briefs may be filed

except with leave of the Law Court." To the extent Burbank's second reply brief is considered an additional brief, Burbank did not seek or receive leave to file it. Finally, Rule 9(c) provides that reply briefs "must be strictly confined to replying to new matter raised in the brief of the appellee." Burbank's reply briefs are not confined to new matter raised in the appellees' briefs and raise new issues not argued in his initial brief.

[¶45] While it is within our discretion to strike one or both of Burbank's reply briefs, this action is unnecessary because we find no merit in any of Burbank's arguments on appeal, including those raised in his reply briefs.

B.     Sanctions

[¶46] Rule 13(f) of the Maine Rules of Appellate Procedure provides that we may impose sanctions against a party on appeal when we determine that an appeal or action taken in the course of an appeal "is frivolous, contumacious, or instituted primarily for the purpose of delay." The First Circuit has observed: "To support a finding of frivolousness, some degree of fault is required, but the fault need not be a wicked or subjectively reckless state of mind; rather, an individual 'must, at the very least, be culpably careless to commit a violation.'" *Roger Edwards, LLC v. Fiddes & Son, Ltd.*,

437 F.3d 140, 142 (1st Cir. 2006) (quoting *Young v. City of Providence*, 404 F.3d 33, 39 (1st Cir. 2005)). We have stated that sanctions are reserved for "egregious cases." *Auburn Harpswell Ass'n v. Day*, 438 A.2d 234, 238-39 (Me. 1981).[8]

[¶47]  Burbank has had both notice of the potential for sanctions on this appeal (and similar notice at the trial court level), and an opportunity to be heard on the motion for sanctions, which he treated with the same disregard for deadlines as he has treated other court rules. The Neighbors and the Co-owners each moved for sanctions against Burbank pursuant to M.R. App. P. 13(f). In his untimely[9] response to those motions, Burbank argues that sanctions are not appropriate because the moving parties lack standing and the trial court's judgment is not adequately supported by the evidence. Burbank's opposition to the motions for sanctions then raises new arguments not contained in his briefs and asserts several new allegations of fact not contained in the trial court record.

---

[8] Opinions in which we have addressed the imposition of sanctions for misconduct on appeal include: *Key Equipment Finance, Inc. v. Hawkins*, 2009 ME 117, ¶¶ 21-24, 985 A.2d 1139, *reconsideration denied*, 2011 ME 102, ¶¶ 1, 7-9, 28 A.3d 1168; *Finch v. Higgins,* 2008 ME 13, ¶¶ 10-14, 953 A.2d 1142; *Hayden v. Orfe,* 2006 ME 56, ¶¶ 7-9, 896 A.2d 968; *Monty v. Monty,* 2004 ME 6, ¶ 1, 840 A.2d 106; *Rothstein v. Maloney*, 2002 ME 179, ¶¶ 11-12, 816 A.2d 812; and *Waxler v. Central Maine Power Company*, 2001 ME 135, ¶ 3, 780 A.2d 1134.

[9] M.R. App. P. 10(c) requires that all responses to motions be filed within seven days. Burbank filed his responses to the motions seventeen and twenty-one days after the motions were filed.

[¶48] Burbank initiated the handling of this appeal with the same cavalier attitude that he demonstrated in his handling of the steps at issue in this case. He did not communicate with the appellees in order to reach some agreement on the contents of the Appendix; he attempted to include in the Appendix documents that were not part of the record below; he failed to respond to a direct order requiring him to explain how he, as the appellant, could purport to represent some of the appellees; he filed a brief "bound" with twine; and as noted above, he failed to comply with M.R. App. P. 9(c), filing a second reply brief without permission.

[¶49] Burbank's brief on appeal demonstrated this same contumacious attitude, a fact he apparently recognized, as, in his request for oral argument, Burbank asserted that some of his filings before us "were not properly edited before being submitted to the Court," and argued for a chance to "correct and clarify these errors, so the Court may be certain that Appellant certainly did not intend them or to offend the dignity and authority of the Court."

[¶50] Burbank's request for oral argument included statements that further highlight the impropriety of his actions in this appeal. Beyond conceding the impropriety of some statements in his several appellate briefs, in Burbank's request for oral argument he proposed to represent the views of

the other Burbank Defendants regarding "the facts and the law." The other Burbank Defendants have declined to have Burbank represent them on appeal and are not participating in this appeal. Burbank, as a member of the Maine bar, must understand that he cannot represent on appeal persons who have declined to appeal and declined to have him represent them on appeal. In fact, in the motion to withdraw that he filed on February 25, 2016, Burbank admitted that the other Burbank Defendants did *not* want him to file an appeal on their behalf.

[¶51] In his request for oral argument Burbank also proposed to testify or otherwise present facts to clarify what his father "meant in his testimony" which the trial court found, in part, to be contradictory and not credible. There can be no question that presenting new facts or other evidence by brief or oral argument is not proper appellate advocacy. *Beane v. Me. Ins. Guar. Ass'n*, 2005 ME 104, ¶¶ 9-11, 880 A.2d 284. Burbank's several briefs include a number of statements about facts that do not appear in the trial court record and thus are improperly offered for consideration on appeal. *Id*. Burbank also filed a "Supplement of Legal Authorities" that includes evidentiary materials and fact statements not in the trial court record, including an advocacy document that Burbank had filed with a private mediator that, as a document

apparently used in settlement efforts, could not have been used at trial pursuant to M.R. Evid. 408(b), and, consequently, was improperly filed with the appeal documents.

[¶52] Beyond his purported representation of people who do not wish to be represented by him, his failure to comply with the logistical rules, his attempt to present new evidence at an appellate proceeding, and his contentious and unprofessional tone, Burbank makes several arguments in support of his appeal that are frivolous and devoid of legal authority to support them.

[¶53] Asserting propositions of law not supported by statute or precedent, absent a good faith effort to evolve the law, is an indication of frivolousness that can subject a party to sanctions. *Finch v. Higgins,* 2008 ME 13, ¶¶ 10-14, 953 A.2d 1142; *see also* M.R. Prof. Conduct 3.3(a)(1), (2); *Hilmon Co. V.I. v. Hyatt Int'l*, 899 F.2d 250, 253 (3d Cir. 1990).

[¶54] Reviewing Burbank's arguments, first he argues that the court's award of a private prescriptive easement to private parties to cross private property on foot is somehow a government taking of land without just compensation. The only authorities Burbank offered to support this claim are a United States Supreme Court opinion and a law review article. The United

States Supreme Court opinion, *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, affirmed the Florida Supreme Court's rejection of a regulatory takings claim and its holding that no takings had occurred when the state placed sand on public beaches in front of plaintiffs' properties to limit or reverse beach erosion.  560 U.S. 702 (2010).  Private prescriptive easement actions were not addressed.  Such actions between private individuals are constitutionally no different than actions for damages, debt collections, forcible entry and detainer, or replevin seeking transfers of money or property interests from one private entity to another.  These court actions are not a government taking of property, and Burbank's argument otherwise is frivolous and baseless.

[¶55]  Second, Burbank argues that neither the Neighbors nor the Co-owners had standing to bring their respective claims.  In effect, he asserts that although the Neighbors demonstrated adverse use of a footpath across the Burbank property for three-quarters of a century, they somehow lacked standing to bring a prescriptive easement action.  And he asserts that although the relationship among the many joint owners of the Burbank property had become dysfunctional, the Co-owners somehow lacked standing to bring the partition action.

[¶56] Burbank argues that the Neighbors lacked standing to claim a prescriptive easement because they could not demonstrate a particularized injury. Although somewhat unclear, he appears to argue that the Neighbors had no rights in the disputed property prior to the court's award of a prescriptive easement, and they could not, therefore, show they suffered any injury at the time they brought the action.

[¶57] Burbank argues that the Co-owners lacked standing because their counter-claim for partition was brought pursuant to 14 M.R.S. § 6501 (2015), which, he argues, does not authorize partition by sale. Contrary to Burbank's contention, partition by sale is available pursuant to the court's equity jurisdiction, as preserved by 14 M.R.S. § 6051(13) (2015). *See Libby v. Lorrain*, 430 A.2d 37, 39 (Me. 1981). Burbank's standing arguments are frivolous and baseless.

[¶58] Third, Burbank contends that the evidence in the record is insufficient to support the court's finding of a prescriptive easement. To support his argument, Burbank asks us to disregard the trial court's explicit determination that certain witnesses' testimony was not credible. Regarding each witness cited by Burbank, the trial court, although it was not required to

do so, specifically stated why it did not find the testimony credible and how the court resolved apparent conflicts in the testimony.

[¶59]  On factual issues, we conduct a deferential review for clear error, meaning that we will defer to the fact-finder's decision as to (1) which witnesses to believe and not believe, (2) what significance to attach to particular evidence or exhibits, and (3) what inferences may or may not be drawn from evidence or exhibits.  *See Stickney*, 2001 ME 69, ¶ 13, 770 A.2d 592; *Sturtevant v. Town of Winthrop*, 1999 ME 84, ¶ 9, 732 A.2d 264; *Lewisohn v. State*, 433 A.2d 351, 354 (Me. 1981).  The existence of contrary evidence that would support a different result, without more, will not justify vacating the trial court's fact-findings.  *Preston v. Tracy,* 2008 ME 34, ¶¶ 10-11, 942 A.2d 718.  We "will not substitute our judgment as to the weight or credibility of the evidence for that of the fact-finder if there is evidence in the record to rationally support the trial court's result."  *State v. Connor,* 2009 ME 91, ¶ 9, 977 A.2d 1003.  Burbank's argument that we should disregard our established standards of appellate review and decide witness credibility issues based on his representations, ignoring the trial court's explicit findings on credibility issues, is frivolous and baseless.

[¶60]  Fourth, Burbank argues that we are not bound to the confines of the trial court record, and may look outside that record when considering the facts on appeal.  Contrary to Burbank's contention, our "review of the merits of an appeal is limited to the facts and evidence in the record before the trial court." *Beane*, 2005 ME 104, ¶ 9, 880 A.2d 284.  Burbank's argument that we should disregard fundamental standards of appellate review to consider and decide the appeal on new facts he has presented on appeal is frivolous and baseless.

[¶61]  Throughout the various stages of this appeal, in his briefs, his Supplement of Legal Authorities, his request for oral argument, and his responses to opposing parties' motions, Burbank has consistently disregarded standards of law and practice that govern appellate review.  He has asserted legal arguments that are frivolous and baseless, and, contrary to governing precedent, he has sought to have us consider and decide the appeal on new facts and new evidence that were not part of the trial court record on appeal.  Burbank's efforts have been disrespectful to the proper role of the trial court, unfair to and expensive for the other parties, and contrary to Maine appellate law.  Burbank's frivolous and baseless actions are egregious conduct that has confused the issues on appeal, delayed final resolution of this matter, and

significantly driven up the costs to other parties. Although the actions taken by Burbank would be concerning if he were a litigant unschooled in law, we note that Burbank is not only an attorney, but an attorney who is licensed to practice in Maine. He is, therefore, presumed to be familiar with our case law, our statutes, and our Rules; his actions demonstrate either a complete lack of understanding or an intentional flouting of those guides.

[¶62] Rule 13(f) recognizes our inherent authority, upon a determination that an appeal, argument, or motion is frivolous, contumacious, or instituted primarily for the purpose of delay, to award an opposing party or their counsel a sanction that may include treble costs and reasonable expenses. Authority to award costs is also provided by 14 M.R.S. § 1802 (2015). In trial courts and on appeal, attorney fees may be awarded for egregious conduct in the course of litigation. *Soley v. Karll,* 2004 ME 89, ¶ 11, 853 A.2d 755. When we award attorney fees on appeal, we may set a fixed sum to be paid towards attorney fees. *See, e.g.*, *Estate of Dineen*, 2006 ME 108, ¶ 8, 904 A.2d 417.

[¶63] As with other rules, the rules regarding sanctions and determinations that an appeal is frivolous are applied equally to represented and unrepresented parties. *Dep't of Health & Human Servs. v. Tardif,* 2009 ME

75, ¶ 7, 976 A.2d 963; *Edwards v. Campbell,* 2008 ME 173, ¶ 11, 960 A.2d 324. Although he purports to speak for or represent the interests of parties who are not participating in this appeal, and although he is an attorney, we consider Burbank to be unrepresented for purpose of our consideration of sanctions. However, attorneys who represent themselves on appeal are assumed to be aware of court rules and their ethical obligations in prosecuting their own appeals. *Marshall v. Webber*, 2008 ME 126, ¶ 4, 955 A.2d 751.

[¶64] Based on the above findings and discussion of sanctions, we conclude that Harold Burbank II should be sanctioned for his repeated misconduct in prosecuting this appeal. As a sanction, Harold Burbank II is required to pay the Neighbors $5,000 toward their attorney fees incurred to defend this appeal, and he is required to pay the Co-owners $5,000 toward their attorney fees incurred to defend this appeal. The Neighbors and the Co-owners are also awarded treble costs on appeal.

The entry is:

> Judgment affirmed. Attorney fees and costs on appeal awarded as indicated in this opinion.

32

**On the briefs:**

Harold Burbank II, Esq., appellant pro se

Jenny Burch, Esq., Weiss & Burch, PA, Bath, for appellees Elizabeth Smith et al.

Adam J. Shub, Esq., Preti Flaherty Beliveau & Pachios, LLP, Portland, for appellees Frederick B. Lincoln et al.

Penobscot County Superior Court docket number RE-2014-49
FOR CLERK REFERENCE ONLY